## UNITED STATES *v.* SHELLEY.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF NEW YORK.

No. 943.   Argued April 11, 1913.—Decided May 26, 1913.

The mere mixing of smoking opium with the residue of opium that has
been smoked, and heating the same, is not a manufacture of opium
for smoking purposes within the meaning of § 36 of McKinley Tariff
Law of October 1, 1890.

Criminal statutes ought not to be extended by construction.

A statute which is primarily designed as a taxing act to raise revenue
on, and not one to suppress the manufacture of, a specified article,
will not be construed so as to subject the same substance more
than once to the tax or to require surveillance over places where
the secondary treatment is conducted as well as over the factory of
primary manufacture.

The prohibition against manufacturing smoking opium under § 36 of
the Tariff Act of 1890 is not more extensive than the clause taxing
the article; and if the article produced is not taxable thereunder
there is no violation thereof in its production.

THE facts, which involve the construction of provisions
of § 36 of the McKinley Tariff Law in regard to the manu-
facture of opium, are stated in the opinion.

*Mr. Assistant Attorney General Harr* for the United
States.

*Mr. Robert M. Moore* for defendant in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

We have here under review a judgment of the District
Court sustaining a demurrer to two counts of an indict-
ment for a violation of § 36 of the act of Congress approved
October 1, 1890, c. 1244, 26 Stat. 567, 620.

This act is the so-called McKinley Tariff Law, and
provided for the tariff duties to be paid upon articles
imported from foreign countries, and also for the collec-

tion of certain internal revenue taxes. The tariff provisions are of course long since superseded. Section 36 reads as follows: "That an internal-revenue tax of ten dollars per pound shall be levied and collected upon all opium manufactured in the United States for smoking purposes; and no person shall engage in such manufacture who is not a citizen of the United States and who has not given the bond required by the Commissioner of Internal Revenue."

The counts in question are the second and third counts of the indictment. The former of these avers (omitting formal matters) that, without having given bond, etc., the defendant "did engage in the manufacture of opium for smoking purposes, in and by employing and using the process by means of which yen shee, which is the product or ashes which remains after prepared, or smoking, opium has been used and smoked by the smoker, is dissolved in water after having been permitted to remain in solution in water in any receptacle or vessel for a period of time; furthermore, by means of which the said aqueous solution of yen shee is strained and purified so as to remove from the said solution all matter which is foreign to such opium as may be contained in the said yen shee, such matter consisting of the product produced as the result of the partial combustion of prepared, or smoking, opium in the course of its use by the smoker for smoking purposes, and by means of which the said aqueous solution of yen shee thus strained and purified is heated and cooked in any receptacle or vessel for a period of time and until a product is produced as the result, among other things, of the evaporation of a part of the aqueous content of the said solution in the course of such heating and cooking, which said product thus remaining is smoking, or prepared, opium of an inferior grade, and which said product resembles in appearance and consistency thick molasses, and is opium for smoking

purposes, against the peace of the United States and their ·dignity, and contrary to the form· of the statute," etc.

The third count charges that the defendant, without having given bond, etc., "did engage in the·manufacture of opium for smoking purposes, in and by employing and · using a process by means of which a high-grade smoking. opium·is dissolved in water in any receptacle or container; and yen shee, which is the product of the partial combustion of smoking, or prepared, opium remaining when the smoker has used such smoking, or prepared; opium for smoking purposes, is in like manner dissolved in water, in any receptacle or container, and the said aqueous solution of yen shee is strained and purified so that all substances contained therein which are. foreign to the opium content in the said·solution, and to the water therein contained, are removed, and which said substances, so removed consist of the product produced as the result of the partial·combustion of prepared, or. smoking, opium in the course of its use by the smoker for smoking purposes; and the said process is, further, that the said aqueous solution of yen shee thus strained and purified is mixed with the aforesaid solution of high-grade smoking, or prepared, opium, and the two solutions thus mixed and combined are heated and cooked in any receptacle or vessel over a slow fire until a product is produced by such heating and cooking and by the evaporation of a part of the aqueous content of the said combined solution, which has the consistency and appearance of thick molasses, and which said product is known as·smoking, or prepared, opium, and which said. product is opium prepared for smoking purposes; against," etc.

This indictment seems to have been framed with the object of indirectly reviewing *Shelley* v. *United States*, 198 Fed. Rep. 88, where the Circuit Court of Appeals for the Second· Circuit ·reversed a conviction that had been had in the District Court under a previous indictment, upon

grounds succinctly expressed in the opinion, as follows (p. 89): "It appears that, when smoking opium has been produced, it may be smoked more than once. That is to say, the residuum left after a first smoking may be simply heated and smoked again. If to this residuum (known as yen shee) some additional smoking opium is added, each time it is reheated, the process of resmoking may be continued longer. We are of the opinion that the mere mixing of smoking opium with the residue of opium that has been smoked, and heating the same is not a 'manufacture of opium for smoking purposes' within the meaning of the statute. The manufacture which the statute contemplates is complete when from the crude opium there has been produced the smoking opium, with which alone, as defendant contended, he operated, in its unsmoked and smoked condition. . . . We think there was error in the refusal to charge that, if the jury found that defendant only mixed smoking opium with the residue which remains after smoking, his act was not a manufacture of opium for smoking purposes within the meaning of the statute."

It appears that the primary manufacture of opium for smoking purposes is done by treating crude opium in such manner as to convert it into a different form, thus rendering it fit for smoking. It is conceded that this manufacture is subject to the tax prescribed by § 36 of the act of 1890. And see *Marks* v. *United States*, 196 Fed. Rep. 476. The counts now under consideration describe two processes by which the residuum of opium remaining after smoking (yen shee), may be reconverted into a form fit for smoking, in the one case by dissolving it in water, straining and purifying the solution so as to remove foreign matter, and then heating and cooking the refined solution, and thereby producing an inferior grade of smoking opium; the other process differs in that an admixture of smoking opium of a high grade is employed together with the yen shee.

In the argument counsel discussed the proper definition of the term "manufacturing," citing *Kidd* v. *Pearson,* 128 U. S. 1, 20; and *United States* v. *E. C. Knight Co.,* 156 U. S. 1, 14; to which may be added *Anheuser-Busch Assoc.* v. *United States,* 207 U. S. 556, 559, which had to do with the drawback provision of the McKinley law (26 Stat. 567, 617, c. 1244, § 25).

But, aside from the general principle that criminal statutes ought not to be extended by construction, we have here the additional consideration that this statute was primarily designed as a taxing act. Section 36 must be read in connection with the accompanying administrative provisions, which render it clear that the tax was designed to yield substantial revenue, and not merely or primarily to prohibit the manufacture of smoking opium. It may easily be believed that if (irrespective of constitutional limitations upon its power) Congress were undertaking to stamp out the practice of opium smoking, it might prohibit such processes of reclaiming as were charged against the defendant in the second and third counts of this indictment. But it is not so easy to believe, in the absence of clear language requiring such a construction, that in prescribing a revenue tax upon the manufacture of opium for smoking purposes, it intended to subject the same substance more than once to the tax, or to require surveillance over opium-smoking resorts—in which, it would seem, such treatment of the residuum might most readily be conducted—the same as over a factory or other establishment where the primary conversion of crude opium into smoking opium is conducted.

Of course the prohibition is not more extensive than the taxing clause; and so we are satisfied that the offences charged in the second and third counts of this indictment are not within the denunciation of § 36 of the act.

*Judgment affirmed.*