UNITED STATES v. JOHNSON.

(District Court, W. D. Tennessee. December 11, 1915.)

No. 332.

1. Poisons ⬥⟳4—Parties to Offenses—"Principal."

Penal Code (Act March 4, 1909, c. 321) § 332, 35 Stat. 1152 (Comp. St. 1913, § 10506), provides that whoever directly commits any act constituting an offense, or aids, abets, commands, induces, or procures its commission, is a principal. Harrison Narcotic Law Dec. 17, 1914, c. 1, § 4, 38 Stat. 788, makes it unlawful for any person who has not registered and paid the special tax as required by that act to send any of the drugs to which that act relates from one state to another, but provides that this shall not apply to common carriers and certain other persons. Held that, where M., who had not registered and paid the special tax and was not one of the persons exempted under the proviso, shipped opium prepared for smoking from New Orleans to Memphis on defendant's order, defendant was guilty as a principal.

[Ed. Note.—For other cases, see Poisons, Cent. Dig. § 2; Dec. Dig. ⬥⟳4.]

2. Customs Duties ⬥⟳134—Importation of Opium—Criminal Prosecutions—Burden of Proof.

Act Cong. Jan. 17, 1914, c. 9, § 2, 38 Stat. 276, makes it an offense to receive, conceal, or buy opium, knowing it to have been imported contrary to law, and provides that on trial for a violation thereof whenever defendant is shown to have had possession of such opium, such possession shall be deemed sufficient evidence to authorize a conviction, unless the defendant shall explain such possession to the satisfaction of the jury. Section 3 provides that on and after July 1, 1913, all smoking opium or opium prepared for smoking found within the United States shall be presumed to have been imported after April 1, 1909, and the burden of proof shall be on accused to rebut such presumption. On a trial for unlawfully receiving, concealing, and buying opium, knowing it to have been unlawfully imported, defendant testified that he was addicted to opium smoking, and requested and induced a friend in New Orleans to procure a quantity of smoking opium and ship it to him. Held, that the mere possession of opium after July 1, 1913, constitutes an offense, unless the party indicted rebuts the presumption of importation as required by the statute, regardless of the purposes for which he may have had it in his possession, and, while the purpose of defendant's possession seemed to be sufficiently explained, this did not rebut the presumption of importation contrary to law.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 336–339; Dec. Dig. ⬥⟳134.]

Johnnie Johnson was convicted of offenses, and he moves for a new trial. Motion overruled.

W. D. Kyser, Asst. U. S. Atty., of Memphis, Tenn., for the United States.

Abe Cohn, of Memphis, Tenn., for defendant.

McCALL, District Judge. The defendant was tried and convicted at the present term of court, under an indictment of two counts. In the first count, he is charged with aiding, abetting, inducing, and procuring the commission of an act constituting an offense against the United States, as defined by an act of Congress of December 17, 1914, known as the Harrison Narcotic Law, by inducing one P. H. Martin to ship cooked opium for smoking purposes, from New Orleans, La., to Memphis, Tenn.; the said P. H. Martin not being duly registered and not having paid the special tax, as required under section 1 of the Harrison Narcotic Law. Count 2 charges the defendant with unlawfully receiving, concealing, and buying opium cooked up for smoking purposes, knowing the same to have been imported contrary to law.

[1] The evidence was conclusive that P. H. Martin shipped cooked opium, prepared for smoking, from New Orleans, La., to the defendant, Johnnie Johnson, Memphis, Tenn., on the order and request of Johnson, who sent the price thereof to Martin before shipment. Johnson is indicted in the first count as an aider and abettor in the commission of the offense; it being charged and proven that Martin had not paid the special tax, and was not duly registered as required by section 1 of the Harrison Narcotic Law. It is sought to hold Johnson as a principal. Section 332 of the Penal Code provides that:

"Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces or procures its commission, is a principal."

The fourth section of the Harrison Narcotic Law provides that:

"That it shall be unlawful for any person who shall not have registered and paid the special tax as required by section 1 of this act to send, ship, carry, or deliver any of the aforesaid drugs from any state or territory or the District of Columbia, or any insular possession of the United States, to any * * * other state or territory or the District of Columbia or any insular possession of the United States: Provided, that nothing contained in this section shall apply to common carriers engaged in transporting the aforesaid drugs, or to any employé acting within the scope of his employment, or any person who shall have registered and paid the special tax as required by section 1 of this act, or to any person who shall deliver any such drug which has been prescribed or dispensed by a physician, dentist, or veterinarian required to register under the terms of this act, who has been employed to prescribe for the particular patient receiving such drug, or to any United States, state, county, municipal, district, territorial, or insular officer or official acting within the scope of his official duties."

The government insists, it having alleged and proved that Martin had not registered and paid the special tax as required by section 1 of the act, and that he is not one of the persons exempted under the proviso of said fourth section of said act, and that he was guilty of the offense of sending, shipping, carrying, or delivering a parcel of said drugs mentioned in said act, to wit, opium prepared for smoking, from New Orleans, in the state of Louisiana, to the defendant in Memphis, in the state of Tennessee, and it also having proven that

the defendant Johnson ordered, requested, and induced Martin to ship him the opium, that under section 332 of the Penal Code he is guilty as a principal. This insistence by the government seems to me to be sound.

[2] The second count, as has been seen, charges the defendant with having unlawfully received, concealed, and bought opium, cooked up for smoking purposes, knowing the same to have been imported con-trary to law, in violation of section 2 of an act of Congress of Janu-ary 17, 1914, which is as follows:

"That if a person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any opium or any preparation or deriva-tive thereof contrary to law, or shall receive, conceal, buy, sell, or in any man-ner facilitate the transportation, concealment, or sale of such opium or prep-aration or derivative thereof after importation, knowing the same to have been imported contrary to law, such opium or preparation or derivative there-of shall be forfeited," etc. "Whenever, on trial for a violation of this section, the defendant is shown to have, or to have had, possession of such opium or preparation or derivative thereof, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant shall explain the pos-session, to the satisfaction of the jury."

It was shown indisputably that the defendant had in his possession opium prepared for smoking purposes. Section 3 of the act of Con-gress, supra, provides:

"That on and after July 1, 1913, all smoking opium or opium prepared for smoking found within the United States shall be presumed to have been im-ported after the 1st day of April, 1909, and the burden of proof shall be on the claimant or the accused to rebut such presumption."

There is absolutely no evidence tending to rebut this presumption of law; the undisputed evidence being that the defendant procured Martin to obtain in New Orleans, for him, opium prepared for smok-ing purposes, and it was found in defendant's possession. So it would seem to follow that the defendant would be guilty under this count in the indictment, except for the last clause in section 2, which provides in substance that the possession of the opium shall be suf-ficient evidence to authorize conviction, *"unless the defendant shall explain the possession to the satisfaction of the jury."*

His explanation was that he was an addict to opium smoking and that he had requested and induced his friend Martin, in New Orleans, to procure a quantity of smoking opium for and ship it to him. The purpose for which he had it in his possession seems to be sufficiently explained, but does that avail him, in the face of the provisions of the third section of said act, which provides in substance that all smoking opium found in the United States after July 1, 1913, shall be presumed to have been imported after the 1st day of April, 1909, and placing upon the defendant the burden of rebutting that presump-tion?

As I read these two sections, it seems to me that under an indict-ment charging a person with receiving, concealing, or buying opium prepared for smoking, and found in his possession after July 1, 1913, knowing the same to have been imported contrary to law, as is charged in this case, then the mere possession of such opium after the last-

named date would constitute an offense, unless the party indicted rebuts the presumption of importation, as required by the act, regardless of the purposes for which he may have had it in his possession. There was no evidence tending to rebut the presumption of importation.

It results from what has been said that the motion for a new trial will be overruled.