## CHARLEY TOY et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit.   May 12, 1920.)

No. 144.

1. **Criminal law ⬳620(1)—Indictment for concealing opium may be tried with one for "manufacturing" same.**

An indictment under Act Jan. 17, 1914 (Comp. St. §§ 8800–8801f), for concealing smoking opium illegally imported, and one under Act Jan. 17, 1914 (Comp. St. §§ 6287a–6287f), for illegally manufacturing smoking opium, manufacturing being there defined so that it may consist of mixing yen shee, or the residue of smoked or partially smoked opium, with other smoking opium, may be properly consolidated and tried together under Rev. St. § 1024 (Comp. St. § 1690), allowing it where there are several charges against a person for the same act or transaction, or for two or more acts or transactions of the same class of offenses, as by the same act of illegal manufacture by mixing there may·be a concealing of smoking opium illegally imported.

2. **Poisons ⬳9—Evidence held to show manufacture of smoking opium.**

Evidence on prosecution under Act Jan. 17, 1914 (Comp. St. §§ 6287a–6287f), for illegal manufacture of smoking opium, *held* to warrant finding of manufacture.

3. **Poisons ⬳2—Congress under commerce clause may make possession of opium presumption of guilt.**

Congress had power, under the power accorded it by the Constitution to regulate foreign commerce, to create the presumption contained in Act Jan. 17, 1914, § 2 (Comp. St. § 8801), making it unlawful to receive or conceal imported opium, knowing it to have been illegally imported, and declaring possession of such opium shall be deemed sufficient evidence to warrant conviction, unless explained to the satisfaction of the jury.

4. **Poisons ⬳9—Single penalty only for manufacturing smoking opium, though statute violated in different ways.**

Under Act Jan. 17, 1914 (Comp. St. §§ 6287a–6287f), by section 1 declaring that no person shall engage in manufacture of smoking opium, who is not a citizen and who has not given bond, and section 2, declaring that every manufacturer thereof shall keep books and render returns, and section 5, declaring a minimum penalty for each and every violation of the preceding sections, there can be only one penalty for a violation of a section, though it be violated in different ways.

Ward, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the Southern District of New York.

Charley Toy and Lee Gip were prosecuted by the United States, and convicted under two indictments, one for concealing smoking opium, the other for manufacturing smoking opium, and they bring error. Modified and affirmed.

Frank Hendrick, of New York City, for plaintiffs in error.

Francis G. Caffey, U. S. Atty., of New York City (John E. Joyce, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge.   The defendant in error has asked for, and has been granted, a reargument on this writ of error, appealing

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

from a judgment of conviction of the crime of concealing smoking opium and manufacturing smoking opium. We heretofore reversed the judgment of conviction, for the reason that, as announced in the opinion filed, error was committed by the trial court in placing the plaintiffs in error on trial on two indictments charging inconsistent offenses, and further that it was incumbent upon the government to prove that the opium in question was in fact imported. We held, in effect, that the presumption created by the statute did not relieve the government from the necessity of offering proof of illegal importation.

The first indictment, filed April 23, 1918, charged the plaintiffs in error with a violation of the Act of February 9, 1909, as amended by the Act of January 17, 1914 (section 8374, Barnes' Federal Code, 35 Stat. 614, 38 Stat. 275 [Comp. St. §§ 8800–8801f]), concealing smoking opium. This statute makes it an offense, after April 1, 1909, to import into the United States opium in any form, or any preparation or derivative thereof, providing that the opium, or preparation or derivative thereof, other than smoking opium or opium prepared for smoking, may be imported for medicinal purposes, and this only under regulations which the Secretary of the Treasury is authorized to prescribe. When so imported, it is subject to the duties which are or may thereafter be imposed by law.

In the second indictment, filed June 26, 1918, under which the plaintiffs in error have been convicted, they are charged with manufacturing smoking opium in violation of the Act of January 17, 1914 (38 Stat. 277 [Comp. St. §§ 6287a–6287f]). This indictment consists of three counts. The first count charges engaging in the manufacture of smoking opium when the plaintiffs in error were not citizens of the United States; the second count charges that the plaintiffs in error were engaged in manufacturing smoking opium without giving a bond required by the Commissioner of Internal Revenue; and the third count charges the manufacture of opium without keeping books, and rendering returns of the materials and products, as required by the Commissioner of Internal Revenue. After conviction, the plaintiffs in error were sentenced, under the first indictment, to two years in the Maryland prison, and, under the second indictment, to pay a fine of $10,000 on the first, second, and third counts, making a total of $30,000. They thereafter sued out this writ of error.

The plaintiffs in error were found in a room on the sixth floor of No. 25 Pell street, New York City, on the night of April 3, 1918. A police officer came to the door, which was opened by Toy. In his hand at the time was a tin of smoking opium. The plaintiff in error Gip was seated at a table in the room rolling opium toys in packages. The testimony is that his hand smelled of the odor of opium. On the table were 124 toys containing smoking opium. The officer found a wash basin containing a quantity of gum opium in the room. He placed this opium in four bottles. There were some other receptacles containing smoking opium and a quantity of yen shee, and some empty receptacles and small tin cans which had contained opium. A metal needle, three knives, a wooden stock, a copper funnel, a basin, a small gas stove and tubing, and a weighing scale were also found. The room

used by the plaintiffs in error was single and unattached. There were no articles of furniture, other than a table and chair. The plaintiffs in error had not provided a bond or obtained a permit, as required by the internal revenue officer of the district, to permit them to engage in the manufacture of smoking opium under the statute. The quantity of opium above referred to is the entire lot which was found in possession of the plaintiffs in error and taken from them. They were not citizens.

[1, 2] In view of the enactment of Congress (Act Jan. 17, 1914, c. 10, 38 Stat. 277), we think it was not inconsistent or erroneous to try the plaintiffs in error on both indictments at one time. In United States v. Shelley, 229 U. S. 239, 33 Sup. Ct. 635, 57 L. Ed. 1167, it was held that the mere mixing of smoking opium with the residue of opium that had been smoked and heating the same is not the manufacture of opium for smoking purposes, within the meaning of Act Oct. 1, 1890, c. 1244, 28 Stat. 620. But it will be observed that, after the decision in the Shelley Case, Congress passed the act of January 17, 1914, which reads as follows:

"Every person who prepares opium suitable for smoking purposes from crude gum opium, or from any preparation thereof, or from the residue of smoked or partially smoked opium, commonly known as yen shee, or from any mixture of the above, or any of them, shall be regarded as a manufacturer of smoking opium within the meaning of this act." 38 Stat. 277, c. 10 (Comp. St. § 6287a).

Under the facts above disclosed, a jury was justified in saying that the plaintiffs in error were preparing smoking opium, or opium suitable for smoking, when they were detected. It appears from the statute quoted that the manufacture of smoking opium may consist of admixing yen shee with other smoking opium, or it may consist of any other preparation of crude gum opium. One who thus mixes these ingredients becomes a manufacturer of smoking opium, and it is thus evident that the same smoking opium may be the subject of more than one preparation for smoking purposes. As before related, the plaintiffs in error, when arrested, were found to have crude gum opium, also smoking opium and yen shee. It was evident, from what was found in the room and all the surrounding circumstances, that the plaintiffs in error were engaged in mixing these ingredients. Thus the jury could say they were engaged in the manufacture, as prohibited by the statute.

The first count of the indictment charges concealment of smoking opium. Since the manufacture was unlawful, the plaintiffs in error, by the same acts and course of conduct, did conceal yen shee and the other ingredients which went to make up their smoking opium, and which they used in their process, and thus were not only guilty of the crime of concealing smoking opium, but also of the crime of manufacturing smoking opium. The jury was justified in finding this from all appearances. Because of this manufacturing statute, to which our attention has been called on the reargument (the act of January 17, 1914), we are of the opinion that the indictments were properly consolidated and tried together. Several charges against the plaintiffs in

error for the same act or transaction, or for two or more acts or transactions of the same class of crimes or offenses, may be properly tried together, where two or more indictments have been found and afterwards consolidated. Section 1024, Rev. Stat. (Comp. St. § 1690).

[3] On the trial, the presumption which is created by section 2 of the act of January 17, 1914, was relied upon. It provides as follows:

"*Penalty for Unlawful Importation—Possession as Evidence.*—If any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any opium or any preparation or derivative thereof contrary to law, or shall receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such opium or preparation or derivative thereof after importation, knowing the same to have been imported contrary to law, such opium or preparation or derivative thereof shall be forfeited and shall be destroyed, and the offender shall be fined in any sum not exceeding $5,000 nor less than $50 or by imprisonment for any time not exceeding two years, or both. Whenever, on trial for a violation of this section, the defendant is shown to have or to have had, possession of such opium or preparation or derivative thereof, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant shall explain the possession to the satisfaction of the jury." Comp. St. § 8801.

The court below, in the charge to the jury, stated that—

"There is a presumption of law that any smoking opium found in the United States after July 1, 1913, will be presumed to have been imported into the United States after April 1, 1909."

The act of January 17, 1914 (38 Stat. 275), prohibits the importation of smoking opium without exception after April 1, 1909. Section 2 makes it unlawful to receive or conceal imported opium after importation, knowing it to have been imported, contrary to law. It provides that possession of imported opium shall be deemed sufficient evidence to warrant conviction, unless the defendant explains the possession to the satisfaction of the jury. Section 3 (Comp. Stat. 1916, § 8801a) provides that after July 1, 1913, all smoking opium within the United States is presumed to have been imported after April 1, 1909, and hence contrary to law, and the burden is upon the accused to rebut the presumption. Ng Choy Fong v. United States, 245 Fed. 305, 157 C. C. A. 497; Id., 245 U. S. 669, 38 Sup. Ct. 190, 62 L. Ed. 539; Gee Woe v. United States, 250 Fed. 428, 162 C. C. A. 498; Id., 248 U. S. 562, 39 Sup. Ct. 8, 63 L. Ed. 422; United States v. Yee Fing (D. C.) 222 Fed. 156; United States v. Johnson (D. C.) 228 Fed. 251.

The act of February 9, 1909 (chapter 100, § 2, 35 Stat. 614), provides that—

"Whenever, on trial for a violation of this section, the defendant is shown to have, or to have had, possession of such opium or preparation or derivative thereof, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant shall explain the possession to the satisfaction of the jury." Comp. St. § 8801.

The defendant in error relies upon this presumption. It submits proof of the fact that opium was found in possession of the plaintiffs in error. The illegal importation is established by the presumption thereof from showing such possession. Luria v. United States, 231 U. S. 9, 34 Sup. Ct. 10, 58 L. Ed. 101. A presumption of one fact

from evidence of another does not constitute a denial of due process of law, or a denial of equal protection of law, if it appears that there was some causal connection between the fact proved and the ultimate fact presumed, and if the inference of one fact from proof of another shall not be so unreasonble as to be a purely arbitrary mandate. There is no vested right to have one's controversies determined by existing rules of evidence. But these rules affect the remedy, and are subject to modification and control by the Congress, and the changes which are enacted may lawfully be made applicable to existing causes of action. Webb v. Den, 17 How. 576, 15 L. Ed. 35; Thompson v. Missouri, 171 U. S. 380, 18 Sup. Ct. 922, 43 L. Ed. 204. The statute raises a presumption of fact. It is the presumption of one fact based upon another proven fact; that is, the presumption of importation arising from the proven fact of possession. The majority of the court are of the opinion that the jurisdiction of the court over the subject-matter may be established by such proof and presumption thus created. We think that Congress had power to create the presumption under the power accorded to it by the Constitution to regulate foreign commerce. In Gee Woe v. United States, 250 Fed. 428, 162 C. C. A. 498, the court treated this act as a regulation of foreign commerce prohibiting the importation of smoking opium, and to make possession of smoking opium, after the date fixed, evidence tending to show that it was imported contrary to law and known to be so by the offender. We think Congress had the undoubted power to create such a presumption.

[4] The statute provides that a minimum penalty of $10,000 shall be imposed for each and every violation of the prohibited act. Section 1 (Act Jan. 17, 1914) covers the offense charged in the first and second counts of the indictment, to wit:

"Neither of the said defendants at the time and place aforesaid being a citizen of the United States," and "did engage in the manufacture of smoking opium without giving the bond required by the Commissioner of Internal Revenue."

Section 2 covers the third count, which charges:

"Did engage in the manufacture of smoking opium without keeping books and rendering returns of the material and products, as required by the regulations of the Commissioner of Internal Revenue."

We are of the opinion that there is a minimum fine of $10,000 for every violation of the section and this does not permit the imposition of two minimum fines for violating the same section in two different ways. We think that a fine of $10,000 should be imposed for guilt as found in the first and second counts of the indictment, and $10,000 for guilt as found and as charged in the third count.

Judgment of conviction as to the first indictment is affirmed and as to the second is modified, making a total fine of $20,000.

WARD, Circuit Judge (dissenting). I dissent from the opinion of the court as to the indictment for concealing imported smoking opium under Act Jan. 17, 1914, § 3. The judicial power of the United States is defined by section 2, art. 3, of the Constitution as follows:

"The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority; to all cases affecting ambassadors, other public ministers and consuls; to all cases of admiralty and maritime jurisdiction; to controversies to which the United States shall be a party; to controversies between two or more states, between a state and citizens of another state, between citizens of different states, between citizens of the same state claiming lands under grants of different states, and between a state, or the citizens thereof, and foreign states, citizens, or subjects."

The authority of Congress to enact the law is derived from its constitutional power to regulate foreign commerce. But opium can be and has been produced in the United States, and may in the future be produced commercially. Congress has no power to enact this law as to such opium. The remarks of Mr. Justice Holmes in United States v. Jim Fuey Moy, 241 U. S. 394, 36 Sup. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854, are very applicable to this situation.

The jurisdiction of the federal courts is not presumed, but must be pleaded and proved, and I think it cannot be proved by a statutory presumption. Could Congress by a general statute establish jurisdiction in all cases brought in federal courts, unless the presumption of jurisdiction were rebutted by the defendant; or, to put a specific case, the Constitution having limited jurisdiction to suits between citizens of different states, could Congress establish jurisdiction by presumption, unless the defendant rebutted the presumption? If the defendant put the jurisdiction in issue, and there was no proof of the fact at the trial, other than the presumption, it seems to me the judgment would be invalid.