**HOWARD et al. v. UNITED STATES.***

No. 5293.

Circuit Court of Appeals, Seventh Circuit.

Jan. 29, 1935.

Rehearing Denied Feb. 21, 1935.

William F. Waugh, Victor E. Larue, and J. J. Goshkin, all of Chicago, Ill., for appellants.

Dwight H. Green, U. S. Atty., of Chicago, Ill., Leslie E. Salter, Sp. Asst. to Atty. Gen., and Mary D. Bailey, Asst. U. S. Atty., of Chicago, Ill., for the United States.

Before SPARKS and FITZHENRY, Circuit Judges, and LINDLEY, District Judge.

FITZHENRY, Circuit Judge.

This is an appeal from a judgment of the District Court finding appellants guilty on two counts of an indictment, in one of which they are charged with having knowingly received, concealed, and facilitated the transportation and concealment of heroin, after unlawful importation, in violation of title 21, section 174, USCA, and in the other one of which they are charged with a conspiracy to violate that section and also title 26, § 692, USCA.

Appellants assign as error that: (1) The court erred in denying appellants' motions to suppress the evidence and in admitting evidence obtained as a result of search and seizure over the objections of appellants; (2) the court erred in overruling the motions of the appellants for a peremptory finding of not guilty at the close of the government's case and at the conclusion of all the evidence. Appellants assign four reasons why it was error of the court to so rule.

Appellant Howard is a race horse owner and trainer, and Mitchell was employed by him as stable foreman. During a period of several months these men had been under the close observation of government agents. It was observed on numerous occasions that a short time before some of the horses from Howard's stable were to run in races, a metal syringe was placed in their mouths and the contents administered. This was done by Mitchell, Howard being frequently present at the time. It was Mitchell's custom to conceal the syringe from observation as far as possible while entering the stable. The officers concluded from these circumstances that a crime was being committed, and on July 28, 1933, having watched Mitchell come from the tack room with a metal syringe partially concealed in his hand, they entered the stall just as he was about to administer the contents of the syringe to the horse called Louie Dear. Mitchell dropped the syringe from the horse's mouth and, when the government agent disclosed his identity and demanded the syringe, Mitchell turned it over to him, with the explanation that it was a tonic for the horse. The narcotic agent was then joined by other inspectors and by a superior officer. Appellant Howard was summoned to the stable, and upon his arrival, according to the government witnesses, he stat-

*Writ of certiorari denied 55 S. Ct. 654, 79 L. Ed. ——.

ed that there was nothing in his barns and they might go ahead and help themselves. He opened some boxes and told them: "Anything here you are welcome to it." When they were unable to open one box because there was no key, Howard broke it open for them.

On the other hand, Howard and his witnesses testified that the government agents said that unless Howard produced the keys they would break the lockers open, and as a result of that threat he gave them what keys he had, and the agents themselves broke the other locker open. As a result of the search, the government agents obtained seven bottles and the contents of the syringe, all of which were found to contain heroin.

■ From the foregoing statement, it is apparent that the District Court might properly have found that the facts were such as to justify the admission of the evidence to which the objections were offered; there being a reasonable ground of belief supported by circumstances sufficiently strong to warrant a cautious man to infer that Mitchell and Howard were committing a crime in the presence of the officers. It is not necessary that an officer absolutely know that an offense is being committed. Garske v. United States (C. C. A.) 1 F.(2d) 620. Moreover, there was substantial evidence that the search made was at the invitation of Howard, in which case the admission of the evidence procured would be justified. United States v. Williams (D. C.) 295 F. 219; Dillon v. United States (C. C. A.) 279 F. 639.

■ Appellants contend that there is no evidence that the heroin was imported contrary to law and that the appellants so knew. The government, on the other hand, proceeded on the theory that under the Narcotic Drugs Import and Export Act, title 21, sections 173 and 174, USCA, the proof of possession of the narcotic drug was proof (1) that the drug had been unlawfully imported into the United States, and (2) that appellants knew of such unlawful importation. The provisions of the statute relied upon are as follows:

"§ 173. Importation of narcotic drugs prohibited; exceptions; crude opium for manufacture of heroin; forfeitures. It is unlawful to import or bring any narcotic drug into the United States or any territory under its control or jurisdiction; except that such amounts of crude opium and coca leaves as the board finds to be necessary to provide for medical and legitimate uses only, may be imported and brought into the United States or such territory under such regulations as the board shall prescribe, but no crude opium may be imported or brought in for the purpose of manufacturing heroin. All narcotic drugs imported under such regulations shall be subject to the duties which are now or may hereafter be imposed upon such drugs when imported.

"Any narcotic drug imported or brought into the United States or any territory under its control or jurisdiction, contrary to law, shall (1) if smoking opium or opium prepared for smoking, be seized and summarily forfeited to the United States Government without the necessity of instituting forfeiture proceedings of any character; or (2), if any other narcotic drug, be seized and forfeited to the United States Government, without regard to its value, in the manner provided by sections 514 and 515 of Title 19, or the provisions of law hereafter enacted which are amendatory of, or in substitution for, such sections. Any narcotic drug which is forfeited in a proceeding for condemnation or not claimed under such sections, or which is summarily forfeited as provided in this subdivision, shall be placed in the custody of the board and in its discretion be destroyed or delivered to some agency of the United States Government for use for medical or scientific purposes.

"§ 174. Same; penalty; evidence. If any person fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or assists in so doing or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported contrary to law, such person shall upon conviction be fined not more than $5,000 and imprisoned for not more than ten years. Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

Appellants contend that since the statute uses the words "*the* narcotic drug," it intended to limit the presumption to cases where the narcotic drug was shown to have been unlawfully imported. We cannot ac-

564

cept this strained construction of the statute. We think that the law places upon the person or persons found in the possession of a narcotic drug, the burden of showing that it came into his possession lawfully. Yee Hem v. United States, 268 U. S. 178, 45 S. Ct. 470, 69 L. Ed. 904; Morlen v. United States (C. C. A.) 13 F.(2d) 625; Charley Toy v. United States (C. C. A.) 266 F. 326.

We have considered the other reasons relied upon by appellants for reversal and find them without merit.

The judgment is affirmed.