**J. D. CHARLES, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 13897.**

United States Court of Appeals
Ninth Circuit.

Sept. 24, 1954.

Rehearing Denied Nov. 1, 1954.

See also, 215 F.2d 831.

Walter H. Duane, Robert B. MacMillan, San Francisco, Cal., for appellant.

A. William Barlow, U. S. Atty., Louis B. Blissard, Asst. U. S. Atty., Honolulu, Hawaii, Lloyd H. Burke, U. S. Atty., San Francisco, Cal., for appellee.

Before MATHEWS, HEALY and LEMMON, Circuit Judges.

MATHEWS, Circuit Judge.

On November 18, 1952, in the United States District Court for the District of Hawaii, appellant, J. D. Charles, also known as James D. Charles, was indicted for violating 26 U.S.C.A. § 2593(a), 53 Stat. 281,[1] which provided: "It shall be unlawful for any person who is a transferee required to pay the transfer tax imposed by [26 U.S.C.A. § 2590(a), 53 Stat. 279][2] to acquire or otherwise obtain any marihuana without having paid such tax; and proof that any person shall have had in his possession any marihuana and shall have failed, after reasonable notice and demand by the collector,[3] to produce the order form required by [26 U.S.C.A. § 2591, 53 Stat. 280, 60 Stat. 40] to be retained by him, shall be presumptive evidence of guilt under [26 U.S.C.A. § 2593(a), 53 Stat. 281] and of liability for the tax imposed by [26 U.S.C.A. § 2590(a), 53 Stat. 279]."

The indictment alleged that on or about November 8, 1952, in the City and County of Honolulu, Territory of Hawaii, appellant, "being a person who, as a transferee, was required to pay the transfer tax imposed by [25 U.S.C.A. § 2590(a), 53 Stat. 279], did knowingly, wilfully, unlawfully and feloniously acquire and obtain fifty-six and four-tenths (56.4) grains of marihuana without having paid said transfer tax, in violation of [26 U.S.C.A. § 2593(a), 53 Stat. 281]."

1. Section 2593(a) was derived from § 8 (a) of the Marihuana Tax Act of August 2, 1937, 50 Stat. 555.

2. Section 2590(a) was derived from § 7 (a) of the Marihuana Tax Act of August 2, 1937, 50 Stat. 554.

3. Section 2593(a) was enacted into law on February 10, 1939. See 53 Stat. 1, 281. At that time, the term "collector," as used in § 2593(a), meant collector of internal revenue. See 26 U.S.C.A. § 3797 (a) (13), 53 Stat. 469, 470. However, effective October 10, 1952—29 days before appellant's alleged violation of § 2593 (a)—the functions of such collectors relating to notice and demand to produce order forms for marihuana were delegated to district supervisors and agents of the Bureau of Narcotics. See Reorganization Plan No. 26 of 1950, 64 Stat. 1280, 15 F.R. 4935, 5 U.S.C.A. § 241 note; Reorganization Plan No. 1 of 1952, 66 Stat. 823, 17 F.R. 2243, 26 U.S.C.A. § 3905 note; Treasury Department Orders Nos. 46 and 157, 17 F.R. 9051. No collector was authorized to exercise any such function after October 10, 1952. Prior to December 1, 1952, the office of collector of internal revenue was abolished, and the office of director of internal revenue was established. Such abolition and establishment became effective on different dates in different collection districts. In the collection district of Hawaii, such abolition became effective on November 25, 1952, and such establishment became effective on November 26, 1952—18 days after appellant's alleged violation of § 2593(a). See Reorganization Plan No. 1 of 1952 supra; Treasury Department Order No. 150–20, 17 F.R. 10747. No director was ever authorized to give or make any notice or demand to produce order forms for marihuana.

Appellant was arraigned, pleaded not guilty, had a jury trial and was found guilty. Thereupon a judgment was entered sentencing him to pay a fine of $2,000 and to be imprisoned for five years.[4] This appeal is from that judgment.

## I

Eight witnesses were called by and testified for appellee, the United States. Appellant did not testify or call any witness or offer any evidence. After the jury was impaneled and before any witness was called, the following colloquy occurred:

"Mr. Landau:[5] While we are discussing this matter, may we at this time ask that the witnesses be excluded?

"The Court:[6] No. As you have probably heard, the rule doesn't exist any more.

"Mr. Landau: No. I am sorry I did not know that. * * * Is this a change in the rules of court, if the court please?

"The Court: No. There is no written rule that you are referring to. It is simply a custom that has grown up here in Hawaii and has been observed for many years as you and I both know. But I find that such a rule does not obtain generally elsewhere, * * * and it is my view that people are required to tell the truth under oath whether they hear anybody else testifying or not, and I know and you know that the rule is something of a theoretical abstraction because

witnesses who have been placed under the rule have been known to testify and then run out and tell the others what was going on. So we will no longer in this division of the court[7] have any such rule."

Thus, in effect, appellant requested, and the District Court refused to make, an order excluding the witnesses from the courtroom. The refusal is specified as error.

An order excluding witnesses from the courtroom is commonly called a rule, and witnesses so excluded are said to have been put under the rule.[8] United States district courts have, and frequently exercise, the power to make such orders.[9]

The practice of putting witnesses under the rule is a time-honored one[10] and should not be abandoned. Of course all witnesses are (as the District Court said) "required to tell the truth under oath whether they hear anybody else testifying or not." Unfortunately, however, some witnesses pay little heed to this requirement. Such witnesses may, and often do, shape their testimony to match that given by other witnesses within their hearing. To prevent such matching of testimony is the prime purpose of putting witnesses under the rule.[11]

It is true that the power to put witnesses under the rule is a discretionary one,[12] and that where, in the exercise

---

4. See 26 U.S.C.A. §§ 2557(b) (1), 2596, 65 Stat. 768, 769.

5. Mr. Samuel Landau, counsel for appellant.

6. The District Court, Chief Judge J. Frank McLaughlin presiding.

7. Meaning, we suppose, the District Court when presided over by Chief Judge McLaughlin. The District of Hawaii has two judges, but no divisions. See 28 U.S.C.A. §§ 91, 133, 62 Stat. 877, 895.

8. See 23 C.J.S., Criminal Law, § 1010; 64 C.J., Trial, § 127.

9. Most of the cases in which such orders have been made by United States district courts are not reported. See, however, Coates v. United States, 9 Cir., 59 F.2d 173; Cagle v. United States, 6 Cir., 3 F.

2d 746; Raarup v. United States, 5 Cir., 23 F.2d 547; Morrow v. United States, 7 Cir., 101 F.2d 654; Twachtman v. Connelly, 6 Cir., 106 F.2d 501; Matz v. United States, 81 U.S.App.D.C. 326, 158 F.2d 190; United States v. Five Cases, 2 Cir., 179 F.2d 519; United States v. Chiarella, 2 Cir., 184 F.2d 903; Powell v. United States, 6 Cir., 208 F.2d 618.

10. See Wigmore on Evidence, Third Edition, § 1837.

11. Witt v. United States, 9 Cir., 196 F.2d 285.

12. Witt v. United States, supra; Lii v. United States, 9 Cir., 198 F.2d 109; Hood v. United States, 8 Cir., 23 F.2d 472; Mitchell v. United States, 10 Cir., 126 F.2d 550; Kaufman v. United States, 6 Cir., 163 F.2d 404.

of its discretion, a district court refuses to put witnesses under the rule, its action is reviewable only in case of an abuse of discretion.[13] Here, however, there was no exercise of discretion. Instead, there was, in effect, a declaration by the District Court that it had abandoned and would not follow the practice of putting witnesses under the rule. This was error.

However, the record does not show that any witness was in the courtroom while any other witness was testifying. We therefore cannot say that appellant was prejudiced by the District Court's refusal to put the witnesses under the rule or by its failure to exercise its discretion.

## II

George F. Richcreek, an agent of the Bureau of Narcotics, called as a witness for appellee, testified [14] that about 4:55 P.M. on November 8, 1952, at a house in Honolulu,[15] Richcreek took appellant into custody; that Richcreek, assisted by Lowell W. Cain, an agent of the Bureau of Narcotics, and by Charles A. Gerlach, a police officer of the City of Honolulu, thereupon began a search of the house and adjacent yard; that Richcreek, Cain and Gerlach were later assisted in the search by other police officers, one of whom was Robert F. Vierra; and that:

"The search was continued and at about 6:45 P.M. Agent Cain asked Charles [appellant] how much money he had in the house. Charles replied that he had ten or twelve thousand dollars, he wasn't sure which was correct. He said that he had it in his bedroom. Agent Cain then told him that he would go to his bedroom and check the money so there wouldn't be any mistake, as if anything happened to the money during the search. Charles then led us to the bedroom, which is just off the rear door to the house, where he opened a rawhide wardrobe steamer trunk * * * and removed two brown grocery type bags of paper currency. This money was counted by Agent Cain and myself in the presence of the defendant [appellant]. * * * There was $17,011.11 in two brown paper bags. * * * That money was then placed back in the brown paper bags and relocked in the trunk by Mr. Charles. * * * The search continued, and Mr. Herbert Chock from the Internal Revenue Bureau, whom we had been trying to contact all evening in relation to the $17,011, arrived,[16] and he interviewed Mr. Charles in relation to this money, and I believe, I don't understand internal revenue angles too much, but I believe he was talking to Mr. Charles about filing an estimated return for the year 1952."

The admission of the above quoted testimony is specified as error.

The above quoted testimony was irrelevant and should not have been admitted. Appellant says that its admission was prejudicial, in that it referred to the $17,011.11 found in appellant's possession and to Chock's interview with appellant and thereby indicated to the jury that appellant was "a large-scale operator in criminal enterprises of some kind" and was "an income tax violator." Actually, it did not so indicate. Furthermore, immediately following its admission, the District Court stated in the presence of the jury: "We are not trying an income tax case." Thereafter the District Court instructed the jury that appellant was "not on trial for having in his possession a large sum of money," and that there was "nothing unlawful about that."

We conclude that appellant was not prejudiced by the admission of the above quoted testimony.

## III

The District Court gave the jury the following instructions:

13. See cases cited in footnote 12.

14. All testimony of Richcreek mentioned in this opinion was given on direct examination.

15. Other testimony showed that this was the house in which appellant resided.

16. Other testimony of Richcreek indicated that Chock arrived about 12:25 A. M. on November 9, 1952.

" * * * Congress has said that if a person such as this defendant [appellant], in relation to a charge such as this, is found to be in possession of marihuana, and upon notice and demand fails to produce an order form covering the transaction, that that person, if he fails to explain that possession, may on that, on those two facts being established beyond a reasonable doubt, alone may be convicted. And in that event, should that be your finding, it is not necessary for the Government [appellee] to prove those other things that I have mentioned in the indictment.

"So, consequently, although this indictment charges the defendant with being a transferee required to pay the internal revenue tax imposed by the law, and charges him also with acquiring and obtaining marihuana without having paid such tax, and thus is described as being a transferee, you are instructed that though that be the charge as written out specifically in the indictment, and that although the Government must prove this beyond all reasonable doubt, that the Congress has provided that the Government may prove it in this particular way—by establishing beyond all reasonable doubt two facts—one, that the defendant had possession of the article mentioned in the indictment, and two, that the defendant failed to produce the required order form covering the article after a notice and demand to produce such form had been made upon him by a representative of the collector of internal revenue, now the director.[17] Now, if those two facts are proven, and the defendant offers no explanation, or if the explanation he offers does not satisfy, then the Government need go no further, and those two facts, proven beyond a reasonable doubt, warrant and require you to return a verdict of guilty. * * *

"And so I repeat that * * * to warrant a conviction at the hands of the jury of this defendant, the Government has to prove only two things, regardless of what is said in the indictment. One, it has to prove beyond a reasonable doubt that the defendant did in fact have actual or constructive possession of the marihuana, and two, it has to prove beyond a reasonable doubt that the defendant was put upon notice and demand was made upon him to produce an order form covering that possession by him of marihuana. Now, if at that point the defendant should go forward and offer an explanation of possession that was deemed by the Government to even come close to being satisfactory, the Government would then have to go forward with its burden of proving all of the things stated in the indictment in the usual and customary way as typical of any criminal case as I have told you. * * * But here we need not concern ourselves with what might have happened if the defendant had offered any explanation. Here the defendant offers no explanation * * * ".[18]

The giving of these instructions, hereafter called the quoted instructions, is specified as error.

The quoted instructions were purportedly based on the presumptive evidence provision of 26 U.S.C.A. § 2593(a), 53 Stat. 281—the provision that "proof that any person shall have had in his possession any marihuana and shall have failed, after reasonable notice and demand by the collector,[19] to produce the order form required by [26 U.S.C.A. § 2591, 53 Stat. 280, 60 Stat. 40] to be retained by him, shall be presumptive evidence of guilt under [26 U.S.C.A. § 2593(a), 53 Stat. 281] and of liability for the tax imposed by [26 U.S.C.A. § 2590(a), 53 Stat. 279]."

---

17. No collector or representative of a collector of internal revenue had, at any pertinent time, any authority to give or make any notice or demand to produce an order form for marihuana. No director of internal revenue has ever had any such authority. See footnote 3.

18. The statement that appellant (defendant) offered no explanation was correct. As indicated above, appellant offered no evidence whatever.

19. See footnotes 3 and 17.

Obviously, the presumptive evidence provision of § 2593(a) was inapplicable unless there was proof that appellant had had in his possession the marihuana described in the indictment and had failed, after reasonable notice and demand by a district supervisor or agent of the Bureau of Narcotics,[20] to produce the order form required by § 2591 to be retained by him.

■ There was no such proof. There was evidence that appellant had had in his possession the marihuana described in the indictment, but there was no evidence that he had failed, after reasonable notice and demand by a district supervisor or agent of the Bureau of Narcotics, to produce the order form required by § 2591 to be retained by him, or that any such notice or demand was ever given to or made on him.[21] Hence the presumptive evidence provision of § 2593(a) was inapplicable, and the quoted instructions were unwarranted and improper.

Even if the presumptive evidence provision of § 2593(a) had been applicable, the quoted instructions would have been improper for the following reasons:

■ Although purportedly based on the presumptive evidence provision of § 2593(a), the quoted instructions did not conform to, and were not in accord with, that provision. Instead of reasonable notice and demand by a district supervisor or agent of the Bureau of Nar-

cotics to produce the order form required by § 2591 to be retained by appellant,[22] the quoted instructions spoke of "notice and demand * * * to produce an order form covering the transaction," "notice and demand to produce such form * * * made upon him by a representative of the collector of internal revenue, now the director,"[23] and "notice and demand * * * made upon him to produce an order form covering * * * possession by him of marihuana." The quoted instructions said nothing about reasonable notice and demand, nothing about notice and demand by a district supervisor or agent of the Bureau of Narcotics, and nothing about an order form required by § 2591 to be retained by appellant.

Attempting to justify the giving of the quoted instructions, appellee cites Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904; Casey v. United States, 276 U.S. 413, 48 S.Ct. 373, 72 L.Ed. 632; White v. United States, 9 Cir., 16 F.2d 870; Pitta v. United States, 9 Cir., 164 F.2d 601; Stoppelli v. United States, 9 Cir., 183 F.2d 391; Cavness v. United States, 9 Cir., 187 F.2d 719; Charley Toy v. United States, 2 Cir., 266 F. 326; Acuna v. United States, 5 Cir., 74 F.2d 359; Howard v. United States, 7 Cir., 75 F.2d 562; United States v. Williams, 2 Cir., 161 F.2d 835; United States v. Markham, 7 Cir., 191 F.2d 936; United States v. Chiarelli, 7 Cir.,

20. See footnotes 3 and 17.

21. Agent Richcreek testified that in the course of the search mentioned above, Officer Vierra found in appellant's yard a cigarette wrapper containing marihuana; that Agent Cain then "asked [appellant] about the tax stamps and marihuana order forms, to which [appellant] said he didn't know what [Cain] was talking about;" that Cain "explained to him that they were forms and tax stamps required to legally transfer marihuana and that if you didn't have them, it was a violation of the law;" that thereafter, in the course of the same search, Richcreek found in appellant's yard a bottle containing marihuana; that Cain "again asked the questions concerning the special tax stamp and the order forms;"

and that appellant "again stated that he didn't know what it was all about." Cain testified that when the cigarette wrapper containing marihuana was found, he asked appellant "if he had order forms and tax stamps for marihuana;" that appellant "said he didn't know anything about that;" and that when the bottle containing marihuana was found, Cain again "asked [appellant] about order forms and tax stamps, which he did not know anything about." There was, however, no testimony that any notice or demand to produce an order form was given to or made on appellant by Cain or anyone else.

22. See footnotes 3 and 17 and subsection (d) of § 2591.

23. See footnotes 3 and 17.

831

192 F.2d 528; Grabenheaimer v. United States, 6 Cir., 194 F.2d 447.

Such justification cannot be found in any of these cases. The Yee Hem, Casey, White, Pitta, Stoppelli, Cavness, Toy, Acuna, Howard and Chiarelli cases did not, nor did any of them, involve § 2593(a) or any provision similar to the presumptive evidence provision of § 2593(a). The Williams, Markham and Grabenheaimer cases involved § 2593(a), but they did not, nor did any case cited by appellee, involve instructions similar to the quoted instructions. Much less did any of the cited cases express approval of such instructions.

We conclude that the giving of the quoted instructions was reversible error.

Judgment reversed.

LEMMON, Circuit Judge, did not participate in the decision of this case.