**UNITED STATES v. FURLONG.**

No. 10429.

United States Court of Appeals
Seventh Circuit.

Jan. 15, 1952.

Rehearing Denied March 4, 1952.

Frank J. McAdams, Jr., Gerald M. Chapman, Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty., Lawrence J. Miller and Joseph E. Tobin, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

Defendants appeal from judgments entered upon a jury's verdicts of guilty upon Counts 1, 2 and 6 of an indictment charging them with impersonation of federal officers in violation of Section 912, Title 18 U.S.C. The issue presented to us is whether the trial judge erred in giving a supplemental instruction to the jury and in refusing to consider the affidavit of a juror in support of defendants' amended motion for a new trial.

The case went to the jury at 11:30 a. m. At 2:30 p. m. the foreman advised the court that a hopeless deadlock existed. The court, after advising counsel of the difficulty, shortly after 3 o'clock, had the jury brought into the courtroom and submitted to it the following supplemental charge: "Although the verdict to which a juror agrees must, of course, be his own verdict—the result of his own convictions and not a mere acquiescence in the conclusion of his fellows, yet, in order to bring twelve minds to a unanimous result, you must examine the questions submitted to you with candor, and with a proper regard and deference to the opinions of each other. You should consider that the case must at some time be decided; that you are selected in the same manner, and from the same source, from which any future jury must come; and there is no reason to suppose that the case will ever be submitted to twelve persons, twelve men and women more intelligent, more impartial, or more competent to decide it, nor that more or clearer evidence will be produced on one side or the other. With this in view, it is your duty to decide the case if you can conscientiously do so. In order to make a decision more practicable, the law imposes the burden of proof on one part or the other, in all cases. In the present case, the burden of proof—the burden is upon the Government to establish the guilt of the defendants beyond a reasonable doubt, and

if you are left in doubt as to the guilt of the defendants, or any one of them, such defendant or defendants is entitled to the benefit of that doubt and must be acquitted. But, in conferring together you ought to pay proper respect to each other's opinions and reasons, with the disposition to be convinced with each other's arguments. And, on the one hand, if much the larger number of you are for a conviction the dissenting jurors should consider whether the doubt in their own minds is a reasonable one which makes no impression upon the minds of so many men and women equally honest, and equally intelligent, and who have heard the same evidence, with the same attention, with an equal desire to arrive at the truth, and under the sanction of the same oath. And, on the other hand, if the majority of you are for acquittal, the minority should equally ask themselves whether they may not reasonably and ought to doubt the correctness of the judgment which is not concurred in by a number of those with whom they are associated and distrust the weight or sufficiency of that evidence which fails to carry conviction in the minds of their fellows. With that admonition you are directed to continue your deliberations until you arrive at a unanimous verdict. You will again retire to your jury room and continue your deliberations."

Defendants' principal assault is upon the last sentence of the charge. That all other parts were proper is apparent from Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528; indeed, they were in the language approved by the court in that case. However, the concluding sentence, that the jury should continue to deliberate until it arrived at a unanimous verdict, is not within the Allen case and defendants urge that it is of such character that it must necessarily have coerced or influenced the jury.

■■■ Criminal Procedure Rule 30, 18 U.S.C. providing that no party may assign as error giving or failure to give an instruction, unless he objects thereto, stating distinctly the matter to which he objects and the grounds of his objection, has the force of law. Under it the objecting party must state specifically to what he objects and the grounds for his objection. It is a salutary rule, for its purpose is to give the judge an opportunity to make any correction which he thinks is proper and, thus, to minimize the possibility of error. Hower v. Roberts, 8 Cir., 153 F.2d 726. It is intended to prevent a litigant from taking advantage, after verdict, of the giving of an erroneous instruction to which he failed to call attention in time to afford the court an opportunity to correct it. Palmer v. Miller, 8 Cir., 145 F.2d 926. Unless the objection is made before verdict, a reviewing court is powerless to consider it; it can not be raised for the first time on motion for new trial or on appeal. Christensen v. Trotter, 9 Cir., 171 F.2d 66; Meadows v. U. S., 4 Cir., 144 F.2d 751; Atwater Kent Mfg. Co. v. U. S., D.C., 53 F.Supp. 472, affirmed, 3 Cir., 145 F.2d 374, 159 A.L.R. 1; and it must be specific; otherwise, it is not sufficient, Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645. If the objecting party does not state in the trial court before verdict, the grounds of his objections and call the attention of the trial court to the claimed error, he is deemed to have waived the right to object. Thiel v. Southern Pac. Co., 9 Cir., 149 F.2d 783, reversed on other grounds 328 U.S. 217, 66 S.Ct. 984, 90 L. Ed. 1181.

The record in this cause discloses that when the court advised counsel that it intended to give the charge approved in the Allen case, it inquired whether either of them had any objection. Counsel for defendants said merely that he "objected." His reasons were not stated. After the court had completed the supplemental charge, counsel for defendants made no motion, either before or after the jury retired, for opportunity to state any objection to the instruction, although the record shows that he was present and inquired as to who the foreman was. Obviously, if defendants thought that the final sentence was erroneous in that it tended to coerce the jury, they should have asked leave to object and called the court's attention to that specific objection. Had they done so, the court could have made any correction deemed proper and avoided any possible

error. By their failure to object or to ask leave to do so, defendants waived any right in this respect. The earlier general objection was not sufficient to preserve the point, as it did not advise the court of any specific ground relied upon. Under the authorities cited, it was too late to set up a valid objection after verdict and to assign error upon it in this court.

█ We might observe that the record is persuasive that the jury was in no wise coerced, influenced or biased, for it reflected by its verdict careful consideration of the issues as to each defendant. Thus, one defendant was found not guilty, and, as to each of the three now appealing, the jury found them not guilty on Counts 3, 4 and 5 but guilty on Counts 1, 2 and 6. Prima facie such verdicts reflect careful consideration and a sense of discrimination by the jury and negate coercion.

█ Defendants take the position that the court did not require the jury to deliberate sufficiently long before giving the additional instruction. We think it is well settled that the time within which such a charge should be given is within the sound discretion of the trial court and that the only question here is whether that discretion was abused. It is undisputed that the jury deliberated more than three hours before the court was advised that a hopeless deadlock existed and recalled it for a further charge; we think the record discloses no abuse of discretion. Allis v. United States, 155 U.S. 117, 15 S.Ct. 36, 39 L.Ed. 91; United States v. Samuel Dunkel & Co., 2 Cir., 173 F.2d 506; Culp v. United States, 8 Cir., 131 F.2d 93.

After defendants had filed their motion for new trial, they asked leave to amend it by filing an affidavit of one juror, who deposed that, after the jury had been empaneled, another juror said to the others that "we just as well might vote now as later, those fellows are guilty." The affiant replied that she thought they "were supposed to hear some evidence." She swore further that one of the jurors remarked that she had read in a newspaper that one of the defendants had been in trouble several times.

Another juror, in the course of the proceedings, before any evidence had been submitted by defendants, said that she had made up her mind. One of the others protested that this was unusual. It will be observed that these were conversations in the jury room among the jurors during the progress of the trial. There is nothing to show that they in anywise affected the final verdict, to which we have adverted and which, as we have said, reflects careful consideration and a sense of discretion in determining the issue as to each defendant, acquitting one entirely and finding others guilty on part of the counts and not guilty on others.

█ It is axiomatic that an affidavit of a juror as to what occurred in the jury room during deliberation of the jury, will not be considered, for sound public policy prohibits impeachment of a verdict by a member of the jury who participates in it. The return to the court is in fact the verdict of twelve; and an attempt by one, afterwards, to impeach it can receive no consideration. This well established doctrine is based upon sound reasoning. See Black v. United States, 5 Cir., 294 F. 828, certiorari denied 264 U.S. 580, 44 S.Ct. 330, 68 L.Ed. 859; Walsh v. United States, 7 Cir., 174 F. 615, certiorari denied 215 U.S. 609, 30 S.Ct. 409, 54 L.Ed. 347; Johnson v. Hunter, 10 Cir., 144 F.2d 565, 567. In the latter case, it was sought to show that a colored juror was intimidated by eleven white jurors. The court said: "It is evident that proof of the fact, if true, would be impossible by anyone other than the negro juror whom the petitioner seeks to have called as a witness in his behalf, and unless this negro juror is a competent witness to testify in support of the allegations contained in the sixth paragraph of the petition for the writ, no hearing was required. The general rule is that evidence of jurors is not admissible to impeach their verdict."

In Mattox v. United States, 146 U.S. 140, 149, 13 S.Ct. 50, 53, 36 L.Ed. 917, the court cited with approval the language of Justice Gray while a member of the Supreme Judicial Court of Massachusetts in Woodward v. Leavitt, 107 Mass. 453 as follows: " 'on

a motion for a new trial on the ground of bias on the part of one of the jurors, the evidence of jurors, as to the motives and influences which affected their deliberations, is inadmissible either to impeach or to support the verdict. But a juryman may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind. So a juryman may testify in denial or explanation of acts or declarations outside of the jury room, where evidence of such acts has been given as ground for a new trial.'" And in Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 808, 56 L.Ed. 1114, the court concluded: "We think the rule expressed in Wright v. Illinois & Miss. Tel. Co., 20 Iowa 195, and Gottleib Bros. v. Jasper & Co., 27 Kan. 770, should apply, that the testimony of jurors should not be received to show matters which essentially inhere in the verdict itself and necessarily depend upon the testimony of the jurors, and can receive no corroboration." In Young v. United States, 10 Cir., 163 F.2d 187, 188, the court said: "It is stated in one of the affidavits that while the jury were deliberating upon their verdict, one member stated to another member that the defendants Deer and Polk were closely associated; that the defendant Polk was a bad man; that he had shot a man and thrown his body in a river; and that for these reasons the two defendants should be convicted and imprisoned. It is stated in the other affidavit that the same member of the jury seemed to be prejudiced against the defendant Polk and said among other things that all of the defendants were in a syndicate and were guilty. * * * While recognizing that the rule may not be without exceptions, and though an exception was recognized in Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917, based upon considerations of sound public policy, it has been held over a long period of time that ordinarily jurors in the United States Courts will not be heard to give testimony, either oral or by affidavit, for the purpose of impeaching the verdict returned where the facts sought to be shown are such that they essentially inhere in the verdict."

It is apparent from these authorities that where it is sought to impeach because of matters occurring within the jury room and not because of extraneous communications with the jury, affidavits of the jurors are incompetent to impeach the verdict. Thus in Wheaton v. United States, 8 Cir., 133 F.2d 522, 526, the court said: "In so far as the affidavit of any juror attempted to impeach the verdict of the jury, or related to a matter resting in his personal consciousness or to the motives or influences which affected the jury's deliberations, the affidavit was incompetent, and it was only competent to indicate the existence of extraneous interference with the jury's deliberations. * * * The affidavits of the jurors, submitted by the appellant, were not proof of the facts recited by the affiants. Glasser v. United States, 315 U.S. 60, 87, 62 S.Ct. 457, 86 L.Ed. 680."

 Here the court announced that, after the affidavit had found its way into the newspapers, other jurors voluntarily expressed a desire to see the judge and to deny its averments. This, too, was immaterial, of course, but it illustrates the danger of permitting a juror to impeach the verdict because of anything inherent in it. It is not claimed in the present case that any third party attempted to interfere with the jury, or that any extraneous matter entered into its deliberation, but merely that, in the course of the conversations in the jury room, one juror said that she had heard or read about one of the defendants. Obviously that should have been disclosed by her on her voir dire when she was examined as to her qualifications as a juror and, just as obviously, if she had forgotten the incident until after she became a juror and she then recalled it, it was her duty to inform the court of her remembrance. Perhaps it is too much to expect a layman to realize his duty in this respect even though thoroughly advised by the court. Under the authorities cited, we conclude that the affidavit was incompetent and was rightfully excluded.

The judgments are affirmed.