UNITED STATES of America,
Plaintiff-Appellee,

v.

Durand CEPHAS, Defendant-Appellant.
No. 12446.

United States Court of Appeals
Seventh Circuit.

Feb. 18, 1959.

Rehearing Denied March 20, 1959.

Martin S. Gerber, George B. Collins, Chicago, Ill., for appellant.

Hon. Robert Tieken, U. S. Atty., Charles R. Purcell, Jr., Asst. U. S. Atty., Chicago, Ill. (John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., of counsel), for appellee.

Before MAJOR, PARKINSON and KNOCH, Circuit Judges.

PARKINSON, Circuit Judge.

Durand Cephas, the appellant here and a defendant below, and defendants Betty Wright, Benjamin Balkcom and Floyd Connie were indicted for violations of the narcotics laws. Counts I and II charged all four with violations on May 22, 1957 of Title 26 U.S.C.A. § 4705(a) and Title 21 U.S.C.A. § 174, respectively; Counts III and IV charged Cephas, Wright and Connie with the same respective violations on June 10, 1957; and Count V was a conspiracy count.

The defendants pleaded not guilty and were tried to the court. Betty Wright was acquitted. Benjamin Balkcom was convicted on the counts under which he was charged but, on motion for new trial, his conviction was set aside and an acquittal entered. Cephas and Floyd Connie were convicted on all five counts. They were each given a general sentence of five years and a fine of $100. This appeal of Cephas followed.

Cephas has specified the contested issues as follows:

"I.

"(a)

"Did the court err in convicting defendant on counts of sale and importation of narcotics when there was no evidence at all of either sale or importation.

"(b)

"Did the court err in convicting defendant of conspiracy without proof that he agreed with anyone to commit a crime and without any allegation in the indictment as to what particular individual he agreed with to commit crime.

"II.

"(a)

"Did the pleadings for narcotics by the sick and pregnant special employee in accordance with the plan devised by the Bureau of Narcotics constitute an entrapment, and

did the United States meet its burden of proving that defendant had such a predisposition to commit crime that there could be no entrapment.

"III.

"Did the court err in convicting Cephas of two crimes that the court held did not happen.

"IV.

"Did the court err in allowing the chief witness for the prosecution to sit at counsel table after a motion to exclude witnesses had been granted."

■ As to contested issues I, II and III if the evidence is sufficient to prove a sale of narcotics by Cephas on June 10, 1957 beyond a reasonable doubt, as charged in Count III of the indictment, free from entrapment, the conviction must be affirmed for the reason that a general sentence on a conviction under an indictment in several counts will be upheld if the penalty imposed does not exceed that prescribed for any one count, if that count be good and warrants the judgment, and the evidence sustains the conviction thereon. Claassen v. United States, 1891, 142 U.S. 140, 146–147, 12 S.Ct. 169, 35 L.Ed. 966; Abrams v. United States, 1919, 250 U.S. 616, 619, 40 S.Ct. 17, 63 L.Ed. 1173; Hirabayashi v. United States, 1943, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774; Pinkerton v. United States, 1946, 328 U.S. 640, 641–642, 66 S.Ct. 1180, 90 L.Ed. 1489; United States v. Karavias, 7 Cir., 1948, 170 F.2d 968, 971; Lawn v. United States, 1958, 355 U.S. 339, 359, 78 S.Ct. 311, 2 L.Ed.2d 321; United States v. Cioffi, 2 Cir., 1958, 253 F.2d 494, 496; United States v. Warren, 7 Cir., 1958, 259 F.2d 142, 143.

The sufficiency of Count III is not questioned and the penalty on conviction of a first offender for a violation of Title 26 U.S.C.A. § 4705(a), as charged in Count III, is a maximum of twenty years imprisonment and a $20,000 fine. The statute makes a five year minimum sen-

tence mandatory and prohibits a suspension of sentence, probation or parole.

■ The contention of Cephas that "the pleadings for narcotics by the sick and pregnant special employee", Rochelle Berry, constituted entrapment is not at all persuasive in view of both the fact that there is evidence in the record of predisposition on the part of Cephas to traffic in narcotics and the District Court found against him on this issue where the testimony was in conflict. In regard to the transaction of June 10, 1957 Rochelle Berry was not present and had absolutely nothing to do therewith and there is no evidence that the heroin sold by Cephas to Federal Narcotics Agent Davis on June 10, 1957 was for Berry. The transaction of June 10, 1957 was solely between Davis and Cephas. Thus the basis for the entrapment defense as to the June 10, 1957 transaction totally vanishes and the cases of United States v. Klosterman, 3 Cir., 1957, 248 F.2d 191, and Sherman v. United States, 1958, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed. 2d 848, cited by Cephas, are inapposite and have no application to the facts here.

On June 10, 1957 Agent Davis went to the home of Cephas. He had previously been there on May 22, 1957. When Davis saw Cephas he complained to him about the last heroin he had bought from Cephas. Cephas said he would speak to his connection about it and at the suggestion of Cephas they went to the Zodiac Bar. Davis asked about some pure heroin and Cephas said the price was $600 and Davis told him he didn't like that price. Davis then asked about two pieces of cut heroin. Cephas made a telephone call and then told Davis "he expected a connection to come by in a short while." Thereafter Davis saw Floyd Connie at the entrance and Cephas said: "That is him now." Cephas went outside alone and met Connie. In a few minutes Cephas returned and told Davis "two ounces of cut heroin would cost * * * $250." Cephas then said he had to call his connection again at about 5:30. Cephas and Davis sat around in the Zodiac Bar until about 5:20 P.M. when Cephas suggested they walk to the Hi-Fi Lounge. En route Cephas went into a store and made a telephone call. The time was then about 5:30. About 6:00 o'clock Cephas made a second telephone call from the Hi-Fi Lounge. In about 20 minutes he received a telephone call. He then obtained a brown paper bag from the barmaid and told Davis to put $250 in it. Davis did so and handed it to Cephas. Cephas gave it to the barmaid. Cephas then walked out of the front door. He came back a moment later and after getting the bag and money from the barmaid went into the men's toilet. When he came out he again walked outside. About 6:40 P.M. he returned accompanied by Connie. Connie went into the men's room and Cephas said to Davis: "When he", indicating Floyd Connie, "comes out of the men's room, you go in there and get the stuff. It will be in a small roll of pink toilet paper on a shelf." When Connie came out Davis went in and in a small roll of pink toilet paper on a shelf Davis found a tinfoil package jammed into the center of the roll. He opened the tinfoil package to look at the powder inside and as he was closing it Cephas came into the men's room and asked him if he had checked the package. Davis said he had and he then left the Hi-Fi. We went to the Bureau of Narcotics where he had the powder weighed and tested. It proved to be heroin hydrochloride, a narcotic drug, weighing 863 grains, or about 2 ounces. The evidence is undisputed that Cephas made the sale to Davis without a written order on a form issued in blank for that purpose by the Secretary of the Treasury or his delegate.

In our opinion the finding of the District Court that on June 10, 1957 Cephas, without any entrapment, did unlawfully sell narcotics to Davis in violation of Title 26 U.S.C.A. § 4705(a), as charged in Count III of the indictment, is adequately supported by substantial evidence. United States v. Perkins, 7 Cir., 1951, 190 F.2d 49; Henry v. United

States, 9 Cir., 1954, 215 F.2d 639; Masciale v. United States, 1958, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859.

■ Cephas contends that he was prejudiced by the presence of Agent Davis at counsel table for the Government after his motion was made and allowed to exclude the witnesses. It has always been the law that the trial court is vested with discretion in ruling on a motion to separate or exclude the witnesses and will not be reversed except for a clear abuse of that discretion. Hood v. United States, 8 Cir., 1927, 23 F.2d 472, 475; Tinkoff v. United States, 7 Cir., 1937, 86 F.2d 868, 879; Mitchell v. United States, 10 Cir., 1942, 126 F.2d 550, 553; Kaufman v. United States, 6 Cir., 1947, 163 F.2d 404, 408; United States v. Postma, 2 Cir., 1957, 242 F.2d 488, 494. In Charles v. United States, 9 Cir., 1954, 215 F.2d 825, upon which Cephas relies, the court again announced the same rule but held on page 828 that there was no exercise of discretion by the District Court as it declared that "it had abandoned the practice of putting witnesses under the rule", i.e., entering an order excluding the witnesses from the courtroom. Thus the District Court there acted arbitrarily and, of course, that was a clear abuse of discretion.

■ There is nothing in this record which indicates how Cephas could have been prejudiced in any manner by Agent Davis being permitted to be at counsel table for the Government during the trial and hearing Rochelle Berry testify when she had nothing to do with nor gave any testimony concerning the June 10, 1957 transaction. Witt v. United States, 9 Cir., 1952, 196 F.2d 285, 286.

In any event there was no abuse of discretion by the District Court under the circumstances here. Powell v. United States, 6 Cir., 1953, 208 F.2d 618, 619.[1]

The judgment is affirmed.

1. It is of more than passive interest to note that the Supreme Court of Illinois, Indiana and Wisconsin, the three states constituting the Seventh Circuit, have so held. People v. Townsend, 1957, 11 Ill.2d 30, 47, 141 N.E.2d 729; Coolman v. State, 1904, 163 Ind. 503, 505, 72 N.E. 568; Zoldoske v. State, 1892, 82 Wis. 580, 604, 52 N.W. 778.