**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Carl K. ELEY, Defendant-Appellant.**

**No. 13414.**

United States Court of Appeals
Seventh Circuit.

Feb. 5, 1963.

Howell W. Vincent, Covington, Ky., for appellant.

Richard P. Stein, U. S. Atty., Joseph A. Kutch, Asst. U. S. Atty., Indianapolis, Ind., for appellee.

Before DUFFY, KNOCH, and CASTLE, Circuit Judges.

KNOCH, Circuit Judge.

Defendant-appellant, Carl K. Eley, was indicted on March 16, 1960, in two counts, each of which charged violation of Title 26 U.S.C. § 7201, in wilfully and knowingly attempting to defeat and evade income tax of $1,541.02, more or less, for the calendar year 1954 (Count I) and of $3,521.32, more or less, for the calendar year 1955 (Count II).

On April 8, 1960, defendant moved for a bill of particulars. On August 26, 1960, that motion was sustained in part and overruled in part. On September 23, 1960, the government sought reconsideration of the order of August 26, 1960, and on November 14, 1960, the District Court modified it, having regard to the an-

nouncement of the government that it would rely exclusively on the net worth and expenditures method of establishing taxable income. The government filed its bill of particulars on November 22, 1960, setting out the dates for which it would offer proof of net worth and the amounts, as follows: December 31, 1953 —$41,371.31, December 31, 1954—$50,-930.81, December 31, 1955—$65,276.49; the periods, nature, and amounts of expenditures for which it would offer proof; and the deductions and number of exemptions allowed in arriving at the claimed taxable income.

Defendant's objections to the government's bill of particulars and his motion for an additional amended bill of particulars were overruled on December 8, 1960.

The government's motion filed December 8, 1960, for leave to amend its bill of particulars to alter the figures on net worth, as follows: December 31, 1953—$41,881.04, December 31, 1954—$54,078.-12, December 31, 1955—$72,245.92; was sustained on December 27, 1960, over objections of defendant. The amended bill of particulars was not actually filed until January 17, 1961, in open court, after the trial by jury had begun.

On January 18, 1961, after a portion of the government's evidence was heard, defendant moved for judgment of acquittal which was denied with leave to renew the motion later. Defendant did renew his motion for acquittal, without success, at the conclusion of the government's evidence on January 23, 1961, at the conclusion of his own evidence, and at the conclusion of the government's evidence in rebuttal on January 27, 1961.

On January 30, 1961, the jury brought in a verdict of guilty on both counts. Defendant's renewal of motion for judgment or new trial on February 3, 1961, was overruled on March 15, 1961. After a pre-sentence report, defendant, on April 6, 1961, was sentenced to serve one year on each count, to run consecutively, and to pay a fine of $2,000 on each count. This appeal followed.

Defendant lists a number of purported errors arising out of the District Court's rulings relating to (1) conduct of the trial, (2) admission of evidence, (3) instructions to the jury, and (4) failure to grant defendant's motions for judgment of acquittal.

The defendant contends that the Trial Judge committed error in compelling him to commence trial before the filing of the amended bill of particulars; in allowing the government to amend its bill of particulars after trial had begun; and in allowing the bill of particulars to be amended in such a manner as to create a "substantial variance with the terms of the Indictment to the prejudice of defendant's substantial rights."

■■ We will review a trial court's order allowing amendment to a bill of particulars only to ascertain whether there has been an abuse of discretion. United States v. Bender, 7 Cir., 1955, 218 F.2d 869, 874; cert. den. 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253. As indicated by the foregoing summary of the facts, defendant learned the figures to be included in the government's amended bill of particulars almost a month before trial. He also knew before trial that the motion to amend the bill of particulars had been sustained and that it would be filed. Defendant was thus spared any element of surprise. There was adequate time to prepare his defense. United States v. Shavin, 7 Cir., 1961, 287 F.2d 647, 650. We conclude that there was no abuse of discretion in permitting the amendment to be filed.

■ Defendant complains that the amended bill of particulars fails to set out his tax liability. We note, in this connection that in defendant's original motion for a bill of particulars, he did not ask for that figure and did not object to the original bill of particulars on that score.

■■ Defendant argues that the jury must have been confused to his prejudice by variance between the indictment and the bill of particulars as amended. The indictment charged defendant with at-

tempts to evade and defeat tax and alleged a specific adjusted gross income figure for each of the years involved in excess of the adjusted gross income figures in his tax returns. The bill of particulars, both the original and as amended, alleged that the proof would show defendant to have had an even larger adjusted gross income for each of the years than set out in the indictment. Plaintiff was obliged to prove attempts to evade or defeat a substantial amount, not the exact figure set out in the indictment. Tinkoff v. United States, 7 Cir., 1937, 86 F.2d 868, 878, and cases there cited, cert. den. 301 U.S. 689, 57 S.Ct. 795, 81 L.Ed. 1346. The defendant was also advised that the government would rely on the differences in net worth to show that defendant's actual adjusted gross income exceeded that set out in his tax returns. This is not a case in which an invalid indictment is sought to be saved by a bill of particulars as in Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) on which defendant relies.

■■ Defendant's counsel states that he has never known of a court's refusing to sustain a motion to separate the witnesses, a practice which he feels "serves as a guarantee that the testimony of the witnesses shall be elicited without information or color from prior testimony given by witnesses that they would be allowed to hear in open court, and also, the references and statements made by the Court with respect to any objections or comments made on any of the previous testimony."

Whether to grant or deny such a motion to separate the witnesses is, again, a matter for the Trial Court's sound discretion. United States v. Cephas, 7 Cir., 1959, 263 F.2d 518, 521, and cases there cited.

The District Judge explained in detail the reasoning behind his denial of the motion to separate the witnesses. He observed that in a lengthy trial such as contemplated here, where estimates ran to more than two weeks' time, the good aims described by defendant would be frustrated in that the witnesses of one day could easily confer with the witnesses of preceding or succeeding days. The Trial Judge thought any advantage which might still accrue from separating the witnesses was overbalanced by the confusion of having messengers move in and out of the courtroom seeking witnesses. We are of the opinion that the Trial Judge did not abuse his discretion in denying the motion in this case.

Defendant sees error in the District Court's having allowed the government to elicit evidence respecting (1) transactions prior to 1954, (2) certain other violations of law, and (3) information purportedly secured from defendant in disregard of his Constitutional privilege against self-incrimination.

The District Court in ruling on objections to admissions of evidence relating to acts and transactions prior to 1954, carefully and repeatedly instructed the jury that this type of information was admitted to serve a very limited purpose; that it could not be used as a basis to draw an inference that defendant was criminally inclined or inclined to evade tax in any other year, but only with regard to the element of intent with respect to the years in issue, or with regard to establishment of defendant's net worth as of December 31, 1953. United States v. Iacullo, 7 Cir., 1955, 226 F.2d 788, 793, cert. den. 350 U. S. 966, 76 S.Ct. 435, 100 L.Ed. 839; Michelson v. United States, 335 U.S. 469, 475–476, 69 S.Ct. 213, 93 L.Ed. 168 (1948) ftn. 8; Holland v. United States, 348 U.S. 121, 133–134, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

■ Defendant argues that he showed acquisition of various assets acquired by him in transactions prior to December 31, 1953. Defendant himself was a witness. He testified that he had been engaged in boxing. The amounts of cash he had on hand when he gave up boxing were relevant to the issue of his opening net worth, as was his credibility in connection with his testimony as to his gains from that endeavor. Typical of the cross-examination to which defendant objects is that in which he was asked about the periods during which he was engaged in boxing. For

example, he said he was still boxing in 1930 and in the early part of 1931. Further questions elicited the information that such boxing did not constitute gainful employment because he was in the Indiana State Reformatory at that time.

Defendant asserted that he had more than $14,000 in cash on December 31, 1953, although he then owed $3,000 to his father-in-law. He said he didn't have to pay the debt at that time. His credibility on this point was a vital factor in the case. The government elicited information regarding his conviction in 1954 of operating a gaming house. His residence and occupation in 1940–41 were relevant to defendant's statement, first, that he filed income tax returns for the years 1935 through 1942, and, then on cross-examination, that his adjusted gross income was not enough to require returns to be filed in 1940 and 1941. He testified that he had been in jail in 1941.

On consideration of the circumstances, we believe that the District Judge did not abuse his discretion in allowing cross-examination to the extent granted here. The testimony did bear on the credibility of the witness and was relevant to the elements of the matter on trial. United States v. Skidmore, 7 Cir., 1941, 123 F.2d 604, 610.

■ Defendant argues that as a result of his meeting with Revenue Agents Frank Ebner, Jr., and Henry T. Nicholas, Jr., the date of which is not clearly shown, at Cincinnati, Ohio, he submitted information regarding his tax returns for 1953 and 1954 and mailed in his living expenses for 1952, 1953 and 1954, without having been warned that the data might be used as evidence in a criminal prosecution. His then attorney, Thomas A. Cannon, testified that he was present at a conference in Cincinnati, Ohio, but he could not recall whether defendant was cautioned or not. He did remember that there were no threats, promises, inducements or intimidation used to persuade Mr. Eley to produce the schedule of living expenses.

On cross-examination, defendant indicated that he did not meet with Agent Ebner at Cincinnati; that his initial interview with him was on February 15, 1956, at the Internal Revenue office in Muncie, Indiana, at which time he was accompanied by his attorney. Agent Ebner testified that it was his standard procedure to advise persons whose tax returns were under consideration that they were under no compulsion to answer questions, but he did not have any independent recollection as to whether he had so advised Mr. Eley. Agent Ernest E. Ittner, Jr., testified that at later interviews with defendant, defendant had interrupted Agent Ittner's advisory statements to say that he was aware of his rights.

Government's Exhibit No. 27, a handwritten account, in pencil, headed "Living Expenses on Carl Eley" was received by Attorney Cannon at his office in Muncie, Indiana, early in January, 1959, and sent on by him to Agent Henry T. Nicholas, Jr., Office of the Regional Counsel, U. S. Treasury Department, Internal Revenue Service, at Cincinnati. This was the only schedule of living expenses which Attorney Cannon recalled receiving from his client, the defendant, or sending on to Agent Nicholas, Attorney Cannon testified that he was expecting to receive this statement; that it was in furtherance of a conference which he attended with defendant at the Regional Counsel's office in Cincinnati; that Exhibit No. 27 was brought to Attorney Cannon's office and forwarded by him to Cincinnati; that he had never been directed by defendant not to turn Exhibit No. 27 over to the Regional Counsel's office.

It appears that the data submitted in evidence was voluntarily and understandingly given. On the record before us, we cannot conclude that the District Judge erred in admitting Government's Exhibit No. 27 into evidence.

■ The defendant contends that the Trial Court committed error in giving Instructions numbered 1 through 56. In his brief, defendant refers to, or quotes from, Instructions numbered 1, 4, 5, 6, 9, 10, 11, 13, 21, 22, 23, 24, 25, 29, 34 and 50. The record shows that on January 30, 1961, out of the presence of the jury, the Dis-

trict Court heard from counsel with respect to objections to instructions. At that time defense counsel stated that the defendant had no objections to the District Court's refusal to give any of his tendered instructions. However, as to the given instructions, objections were stated to Instructions numbered 25 and 32. The transcript indicates that counsel then asserted that: "The defendant will interpose no objection to any other instruction offered, or given." The Court replied:

"The Court having discussed these two instructions last Saturday in chambers will state that it will, as decided at that time, after having heard from Counsel for the defendant, still stand upon the instruction as given, in other words—* * * It will remain as given."

Defendant is thus precluded from reviewing, in this Court, the action of the District Court as to all instructions other than numbers 25 and 32. United States v. Bender, supra, 218 F.2d 875. In referring to Instruction No. 25 in his brief, defendant emphasizes the wording:

"* * * By way of illustration only, you are instructed that an affirmative, willful attempt may be inferred from conduct such as *concealment of assets or covering up income, or sources of income, making false entries or alterations, or other false records, destruction of records,* * * *failing during the course of an investigation to supply any information for purposes of computation, assessment or collection of income tax when such failure is found by you to be unjustified, or failure to include a substantial amount of income in the tax return,* and any conduct the likely effect of which would be to mislead or to conceal. If the tax evasion motive plays any part in such conduct, the offense may be made out even though the conduct may also serve other purposes (emphasis added)"

As the government points out, this instruction is apparently modeled on the opinion of the U. S. Supreme Court in Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943) where Mr. Justice Jackson, speaking for the Court, says:

"By way of illustration, and not by way of limitation, we would think affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal. If the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes such as concealment of other crime."

In his brief, defendant makes no express reference to Instruction No. 32, which told the jury that a taxpayer who keeps books, from which his net income can be ascertained, must produce them for reasonable inspection by revenue agents, and that failure to do so may be considered in deciding whether he wilfully filed a false return. Beard v. United States, 4 Cir., 1955, 222 F.2d 84, 92, cert. den. 350 U.S. 846, 76 S.Ct. 48, 100 L.Ed. 753.

We find no error in the instructions given.

It is further contended on defendant's behalf that the government was allowed to prove net worth at the starting point of December 31, 1953, with only reasonable accuracy instead of accuracy "to the exclusion of every reasonable hypothesis, except guilt." The District Court instructed the jury that the net worth starting point must be established with reasonable certainty and accuracy. That was in Instruction No. 34, to which,

as we have indicated, no objection was made in the District Court. This instruction was a proper one. Holland v. United States, 348 U.S. 121, 132, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

 Defendant contends that four items were improperly omitted from calculation of his net worth as of December 31, 1953.

"(1) Withdrawal check dated
Oct. 16, 1953 .............5,000.00
(2) Withdrawal check dated
Dec. 1, 1953 ..............4,000.00
(3) Little green box ........3,000.00
(4) Sale of cars ...........2,300.00"

On cross-examination, defendant had indicated that he put $6,500 into his savings account on October 16, 1953. Agent Ittner testified that defendant told him that a $5,000 withdrawal from the defendant's checking account, at that time, represented a transfer of funds from the checking to the savings account. Accordingly the withdrawal check of $5,000 dated October 16, 1953, was not included. Defendant denied making that statement to Agent Ittner, thus presenting an issue of fact for the jury. The withdrawal check of $4,000 dated December 1, 1953, was included in the figure for cash on hand according to the testimony of Agent Ittner. On cross-examination, defendant testified that he had not told government agents about any cash in his "little green box." At the trial, he testified (as indicated above) that he had more than $14,000 which he kept in cash in that box. The previously mentioned debt of $3,000 to his father-in-law was not paid till July, 1954. On cross-examination, defendant first said that he sold his used cars in 1953 for $2,300 and had no used cars left in December, 1953. He also admitted that he told a Mrs. Berman (who had previously testified to that effect) in March, 1954, that he was "in real need of money" because he "had it tied up in used cars." Defendant testified that this was merely casual talk to establish credit with Mrs. Berman.

The government obviously did not believe defendant's testimony on these points. Evidently the jury was equally unconvinced. These were matters of credibility for the jury.

There was substantial evidence here which, viewed in the light most favorable to the government, did tend to show defendant guilty beyond a reasonable doubt. The District Judge properly denied defendant's motions for judgment of acquittal. United States v. Yoeman-Henderson, Inc., 7 Cir., 1952, 193 F.2d 867, 869, and cases there cited.

We have carefully considered all other points raised by the defendant but find no basis for altering our conviction that the judgment in the District Court must be affirmed.

Affirmed.