**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Sam GARAFOLO, Defendant-Appellant.**

**No. 15813.**

United States Court of Appeals Seventh Circuit.

Oct. 11, 1967.

Rehearing Denied Nov. 1, 1967.

Opinion Vacated Jan. 29, 1968.

See 88 S.Ct. 841.

Schnackenberg, Circuit Judge, dissented.

Jerome Rotenberg, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for appellee, Gerald M. Werksman, Michael B. Nash, Asst. U. S. Attys., of counsel.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and KNOCH, Circuit Judges.

HASTINGS, Chief Judge.

Sam Garafolo appeals from a judgment of conviction and sentence of ten years, following a trial by jury, for violations of the federal narcotics laws.

He was found guilty on five counts of the possession of narcotics in violation of § 174, Title 21 U.S.C.A., and on five counts for the sale of narcotics in violation of § 4705(a), Title 26 U.S.C.A. He was found not guilty of conspiracy as charged in Count XI of the indictment. The other three defendants were found not guilty by the jury as to all counts in which they were named.

No question is raised on this appeal as to the sufficiency of the evidence to support the convictions.

Appellant charges five procedural or trial errors as the basis for a reversal of the convictions below.

The indictment charges that on five dates in late 1963 and early 1964 appellant possessed and sold heroin to one Ted Haney. A brief summary of the evidence follows.

Haney was a principal Government witness at the trial. He testified he was arrested for selling narcotics on October 31, 1963, and was taken to the office of the Narcotics Bureau in Chicago. While at the office he made a telephone call to appellant at the Web Tavern in Chicago, where appellant was employed, while Narcotics Agents Vernon Meyer and Clarence Cook listened on an extension telephone, *in view of Haney*. Appellant answered the phone and Haney arranged to meet him at the Web Tavern that evening on a business transaction. Haney was accompanied by Agent Cook to the meeting with appellant. After appellant served Haney at the bar, Haney told appellant he had $700 for "stuff." Appellant then gave Haney a brown manila envelope, in exchange for the money, and Haney left the tavern with Agent Cook. The contents of the envelope were tested and found to be heroin.

Haney testified that on each of four subsequent dates he made a telephone call from his home to appellant at the Web Tavern, while Agent Cook listened on an extension phone, *in view of Haney*. On each occasion he arranged to meet appellant at the tavern. He then went to the tavern in the company of Agent Cook, entered the tavern, gave appellant funds furnished by the Narcotics Bureau, and received a package, which he turned over to narcotics agents after leaving the tavern. The contents of the packages were tested and found to be heroin.

Narcotics Agent Meyer testified he monitored the call Haney made to appellant from the office of the Narcotics Bureau on October 31, 1963. Meyer corroborated Haney's testimony concerning

his conversation with appellant. He also testified to his observations from outside the Web Tavern on the occasions of the five sales of heroin covered by the indictment.

Agent Cook testified he monitored four telephone calls made by Haney from Haney's home to appellant at the Web Tavern. He used an extension telephone, *in view of Haney.* He corroborated Haney's account of those conversations, and testified concerning the transactions between Haney and appellant in the Web Tavern on October 31, 1963.

Other narcotics agents testified to their observations inside and outside the Web Tavern on the occasions of the five sales of heroin. *According to their testimony,* Haney entered the tavern on the dates of the last four sales charged in the indictment and gave appellant money in exchange for an envelope or package. Their descriptions of the envelope or package matched the descriptions given by Haney.

Appellant's chief contention is that the trial court erred in refusing to give a tendered instruction that the jury could consider witness Haney's prior conviction of a felony in determining his credibility.[1] The trial court instructed the jury that evidence of a *defendant's* prior felony conviction could be considered only insofar as it might affect his credibility, and also instructed the jury that they should take into consideration the prior inconsistent statements of a witness in determining the credibility of the witness. Appellant argues that the giving of these specific instructions and the omission of a specific instruction on

the effect of a prior felony conviction on a witness' credibility might have given rise to an implication that the jury should disregard witness Haney's felony conviction in determining his credibility.

Appellant has not shown prejudice resulting from the trial court's refusal to give the requested instruction. Early in its direct examination of Haney, the Government brought out his 1933 murder conviction. The fact of Haney's conviction was before the jury during his testimony. Although the trial court did not specifically call the conviction to the jury's attention, it gave the following broad, general instruction on the determination of credibility:

"It is your province to determine the credibility of the witnesses and the weight to be given to their testimony. In weighing the testimony of each witness, you should consider his relationship to the government or to the defendant, the witness' interest, if any, in the outcome of the case, his manner of testifying, his candor, his fairness and intelligence and the extent to which he has been corroborated or contradicted, if at all, by other credible evidence, and if you believe that a witness willfully has sworn falsely to a material fact, you may disregard his testimony in part or in whole except insofar as it may have been corroborated by other credible evidence."

\* \* \* \* \* \*

"You should consider all of the facts and circumstances in determining what credence to give to the testimony of each witness."[2]

1. The refused tendered instruction reads:
 "You are instructed that Ted Haney is an informer for the Bureau of Narcotics. The testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by his interest or his prejudice against the defendant.

 "You are further instructed that the evidence shows that the informer, Ted Haney, has been convicted of a felony. The testimony of a witness may be discredited or impeached by showing that he has been convicted of a felony. As such, his testimony must be carefully examined and weighed with great care."

2. It should be noted that in the refused tendered instruction (fn. 1) the concluding emphasis is that such "testimony must be carefully examined and weighed with great care." The trial court did

■ This instruction negated any implication that might have arisen from the omission of the requested specific instruction. The fact that Haney was a convicted murderer was one likely to have a strong impact on the minds of jurors, not one likely to be overlooked if not specifically called to their attention by an instruction. The effect of evidence of a witness' prior conviction is distinguishable from that of a defendant's prior conviction. If the latter is admitted an instruction is required to *limit* the jury's consideration of the evidence to the issue of the defendant's credibility as a witness, and to prevent consideration of the prior conviction in determining his guilt. A witness' prior conviction has a natural tendency to reflect on his veracity, and that tendency does not require the reinforcement of a specific instruction.

■ This court held in Ruvel v. United States, 7 Cir., 12 F.2d 264 (1926), that the giving of an instruction on a witness' prior conviction rests in the sound discretion of the trial court:

"We do not understand that any [duty to give an instruction on impeachment by prior conviction] rests on the court. In his sound discretion he should charge the jury on the subject of the credibility of witnesses. This was done in charging them that they are the sole judges of the credibility of witnesses, whose interest or bias should be taken into consideration, and that the jury should apply all tests which their common sense tells them should be applied in determining the weight of evidence. The court is not required to call attention to specific facts which may discredit witnesses, with possible exception, perhaps, of the cautionary charge as to accom-

plices, which is and ought usually to be given, and which was here fully given with respect to Mills." Id. at 265.

See also, United States v. Inciso, 7 Cir., 292 F.2d 374, 381 (1961), cert. den., 368 U.S. 920, 82 S.Ct. 241, 7 L.Ed.2d 135 (1961); United States v. Sorcey, 7 Cir., 151 F.2d 899, 901 (1945), cert. den., 327 U.S. 794, 66 S.Ct. 821, 90 L.Ed. 1021 (1946); Wainer v. United States, 7 Cir., 82 F.2d 305, 308 (1936). The instructions given in this case satisfy the *Ruvel* criteria. They inform the jury that theirs is the province to determine credibility, and that they should consider all of the facts and circumstances in determining credibility.

The District of Columbia Circuit recently considered an appeal involving this issue. The appellant had been convicted of violating various narcotics statutes. He argued on appeal that the trial court committed reversible error by refusing to give an instruction that the testimony of a police informer with prior narcotics convictions should be considered cautiously. In a per curiam opinion, the court affirmed:

"First we note that the jury was fully advised of the informant's criminal record and drug addiction, and the jury was instructed that it was the sole judge of the credibility and weight to be given to each witnesses' testimony. Here the police informant's testimony was corroborated by other eyewitness testimony, and in these circumstances the refusal of the court to give a requested cautionary instruction is not reversible error. The trial judge is not an automaton mechanically required in all cases to give cautionary instructions such as those requested even though, as we have said, generally the trial court would be 'well ad-

exactly that in an instruction it gave on Haney's role as a Government informant:
"If you find from the evidence that Ted Haney is an informant of the Federal Bureau of Narcotics, you may consider the principle that the testimony of an informer who provides evidence against the defendant or for immunity

from punishment or personal advantage or vindication must be examined and weighed by you with greater care than the testimony of an ordinary witness. *As such, his testimony must be carefully examined and weighed with great care.*" (Emphasis supplied.)

'vised' to do so and would have been on sounder ground had it given the cautionary instruction here. Some discretion rests in the judge, however, and we cannot view his action in this case as an abuse of discretion warranting reversal." Hardy v. United States, 119 U.S.App.D.C. 364, 343 F.2d 233, 234 (1964), reh. den. en banc, 343 F.2d 235 (1964), cert. den., 380 U.S. 984, 85 S.Ct. 1353, 14 L.Ed.2d 276 (1965).

All of Haney's testimony relating to the telephone conversations with appellant and the purchases of heroin at the Web Tavern was corroborated by at least one narcotics agent who testified. Agents Meyer or Cook monitored each of the telephone conversations described by Haney and testified to their content. At the time of each purchase of heroin described by Haney, narcotics agents were conducting surveillance both inside and outside the Web Tavern. These agents testimonially confirmed Haney's account of the purchases.

■ Assuming, arguendo, that failure to give the requested instruction was error, it was harmless error. In a criminal case the test is "what effect the error had or reasonably may be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong in the minds of other men, not on own's own, in the total setting." Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557 (1946).

In the total setting of this case it is unlikely that the court's refusal to give the requested instruction had a substantial effect on the jury and affected the outcome of the case. As noted, Haney's prior conviction was before the jury, his testimony was corroborated, and the jury was instructed to consider "all of the facts and circumstances," as well as his role as a Government informant.

Moreover, the evidence of appellant's guilt is overwhelming and its sufficiency is not herein challenged. Disregarding Haney's testimony, there is evidence that on five occasions appellant arranged meetings with Haney and sold heroin to Haney.

Appellant contends the trial court erred in admitting the agents' testimony concerning Haney's telephone conversations with appellant, which they overheard by means of an extension telephone. Appellant argues that evidence of the conversations was inadmissible because obtained in violation of § 605, Title 47 U.S.C.A. Section 605 provides in part that:

"[N]o person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person * * *."

■ Evidence obtained in violation of § 605 is not admissible in a federal court. Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314 (1937).

Appellant's argument falls short. A careful reading of the relevant record clearly demonstrates that no objection was made during the trial to the admissibility of the conversations on the grounds of a violation of § 605. This section of the statute was never mentioned.

Although appellant objected to questions asked of Agents Cook and Meyer in other respects, the § 605 question is raised here for the first time on appeal.

Further, it is apparent from the record that the trial court was probably unaware of § 605. When the court asked whether there was a requirement of permission to intercept a telephone conversation, counsel for all defendants remained silent.

■ An error not raised in the trial court may not be raised for the first time on appeal. United States v. DiFronzo, 7 Cir., 345 F.2d 383 (1965), cert. den., 382 U.S. 829, 86 S.Ct. 67, 15 L.Ed.2d 74 (1965), reh. den., 384 U.S. 982, 86 S.Ct. 1856, 16 L.Ed.2d 693 (1966); Holmes v. United States, 7 Cir., 323 F.2d 430 (1963), cert. den., 376 U.S. 933, 84 S.Ct. 704, 11 L.Ed.2d 652 (1964); United States v. Sferas, 7 Cir., 210 F.2d 69 (1954).

206

■ Defendants' general objections and specific objections on other grounds to the admission of the agents' testimony concerning the telephone conversations did not preserve the § 605 issue on appeal. See On Lee v. United States, 343 U.S. 747, 749–750, n. 3, 72 S.Ct. 967, 96 L.Ed. 1270 (1952), reh. den., 344 U.S. 848, 73 S.Ct. 5, 96 L.Ed. 1270 (1952); United States v. Bender, 7 Cir., 218 F.2d 869 (1955), cert. den., 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253 (1955); United States v. Furlong, 7 Cir., 194 F.2d 1 (1952), cert. den., 343 U.S. 950, 72 S.Ct. 1042, 96 L.Ed. 1352 (1952). The exception to this general rule of nonreviewability is the "plain error" doctrine provided in Rule 52(b) of the Federal Rules of Criminal Procedure, Title 18 U.S.C.A. Here, the record reveals no plain error in the ruling of the trial court now challenged.

■■ Appellant argues that even if no proper objection were made, the Government was required to establish the consent of one of the parties to the conversations before examining the witnesses about the contents of the conversations. On the contrary, the burden is on the party opposing the admission of the evidence to establish that the communication was intercepted in violation of § 605. Nardone v. United States, 308 U.S. 338, 339, 60 S.Ct. 266, 84 L.Ed. 307 (1939); United States v. Campbell, 7 Cir., 337 F.2d 396 (1964), cert. den., 379 U.S. 983, 85 S.Ct. 694, 13 L.Ed.2d 573 (1965). If one of the parties consents to the monitoring of the communication, there is no "interception" and evidence of the contents of the communication is admissible. Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957), reh. den., 355 U.S. 925, 78 S.Ct. 363, 2 L.Ed.2d 355 (1958), but the consent must be voluntary, Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298 (1939). In Weiss, evidence of the intercepted communication was excluded because the requisite consent was obtained by means of a promise of leniency to certain defendants who had been parties to the communication. In Weiss, there was no knowledge of or consent to

the interception, and the *consent to divulgence* was obtained by means of promised leniency. Here, every fair inference to be drawn establishes that Haney consented to the monitoring of his calls to appellant. There is nothing in the record to indicate that threats or promises were used to obtain his cooperation and consent.

Appellant further contends the trial court erred in preventing him from cross-examining the witness Haney concerning his residence. Appellant relies on Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931). In *Alford*, the defendant was not permitted to cross-examine a Government witness about his residence. The Supreme Court reversed defendant's conviction on the ground that the defendant should have been permitted to probe the witness' background as a possible aid to impeachment:

"Cross-examination of a witness is a matter of right * * *. Its permissible purposes, among others, are that the witness may be identified with his community so that independent testimony may be sought and offered of his reputation for veracity in his own neighborhood * * *; that the jury may interpret his testimony in the light reflected upon it by knowledge of his environment * * *; and that facts may be brought out tending to discredit the witness by showing that his testimony in chief was untrue or biased * * *." Id. at 691–692, 51 S.Ct. at 219 (citations omitted.)

■ In the instant case, Haney was not permitted to testify concerning *his address at the time of trial*, but was permitted to testify that his address at the time of the first heroin purchase from appellant was 7104 Union Street, Chicago, Illinois. Agent Cook testified that after the third, fourth, and fifth purchases from appellant, he drove Haney to 71st and Union Streets; from this it could reasonably be inferred that Haney's residence continued at the Union Street address. Other aspects of Haney's background, including his prior murder con-

viction, his prior arrest for carring a gun without a permit, his employment record, and his arrest for sale of narcotics shortly before he began cooperating with narcotics agents, were brought out on direct and cross-examination. Defense counsel were permitted to inquire whether Haney received compensation from the Government, whether he had used an alias, and whether he had been promised leniency in return for his cooperation. In light of the wide latitude allowed on cross-examination, the trial court's refusal to permit cross-examination concerning Haney's residence at the time of trial was not prejudicial error. Haney was sufficiently identified with his community to enable appellant to investigate his reputation for truth and veracity in that community. His personal character was deeply probed by defense counsel.

Appellant contends that the trial court erred in permitting Narcotics Agent Meyer, who was the Government's third witness, to remain at Government counsel's table, after excluding all other witnesses on defendants' motion. When the Government asked for an exception to permit Agent Meyer to remain in the courtroom, a long colloquy ensued between the trial court and counsel, during which the court repeatedly indicated it would grant the exception in favor of Agent Meyer, but recommended to Government counsel that he not insist upon the exception, unless necessary. Appellant seizes upon the court's remarks as evidence that it abused its discretion by failing to exercise it.

It is well-established that the exclusion of witnesses is within the sound discretion of the trial court, and failure to exclude witnesses does not constitute error unless there is a clear abuse of discretion. United States v. Eley, 7 Cir., 314 F.2d 127 (1963); United States v. Cephas, 7 Cir., 263 F.2d 518 (1959); Powell v. United States, 6 Cir., 208 F.2d 618 (1953), cert. den., 347 U.S. 961, 74 S.Ct. 710, 98 L.Ed. 1104 (1954), reh. den., 347 U.S. 979, 74 S.Ct. 789, 98 L.Ed. 1118 (1946). Contrary to appellant's argument, the trial court exercised its discretion by determining to follow the rule excepting an investigative officer from the order excluding witnesses. There is no substance to this contention.

As a final ground for reversal the appellant argues the trial court erred in replacing a juror with an alternate juror without a hearing at which appellant was present. Rule 24(c) of the Federal Rules of Criminal Procedure, Title 18 U.S.C.A., provides that "[a]lternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties." Appellant argues that Rule 43, which provides that "the defendant shall be present * * * at every stage of the trial including the impaneling of the jury * * *," requires that the determination of a juror's disqualification or inability to perform be made in an open hearing. The same issue was recently presented to the Second Circuit in United States v. Houlihan, 2 Cir., 332 F.2d 8 (1964); cert. den., 379 U.S. 828, 85 S.Ct. 56, 13 L.Ed.2d 37 (1964). The court found no error:

"Although every effort should be made to afford such an opportunity, we do not think that failure to do so in a case such as this presents grounds for reversal. Situations may sometimes arise when a respect for the rights of jurors will require the judge to take immediate action without consulting counsel—e.g., if a juror is taken so ill that he cannot come to court or has a family emergency requiring him to leave during the night or over a weekend. We hold that no error was committed by the trial judge in excusing the juror prior to the arrival of defendants and their counsel." Id. at 13.

Here the record indicates that the replaced juror failed to report on March 16, 1966, when the trial resumed after an adjournment of one day. The trial court informed counsel that *the juror had not recovered from a virus* and that it had replaced her with the alternate juror. Appellant made no objection and the trial continued. The juror's ill-

ness was an emergency justifying the trial judge in acting summarily. Such summary action does not constitute error in the absence of a showing of prejudice. United States v. Ellenbogen, 2 Cir., 365 F.2d 982 (1966), cert. den., 386 U.S. 923, 87 S.Ct. 892, 17 L.Ed.2d 795 (1967); United States v. Houlihan, supra. Appellant has shown no prejudice. Counsel were well aware of the regular juror's illness, as her illness required the court to recess twice and adjourn early on the afternoon of March 14. There is no merit to this contention.

Finding no prejudicial error, the judgment of conviction appealed from is affirmed.

Affirmed.

SCHNACKENBERG, Circuit Judge (dissenting).

The record shows that the credibility of Ted Haney, a government witness, was vulnerable to attack on the grounds (1) that he had been convicted of murder and (2) that he was an informer who, in return for immunity from prosecution, provided evidence against defendant. Recognizing both of these grounds, defense counsel tendered to the court the following instruction, which was rejected:

"You are instructed that Ted Haney is an informer for the Bureau of Narcotics. The testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by his interest or his prejudice against the defendant.

*"You are further instructed that the evidence shows that the informer, Ted Haney, has been convicted of a felony. The testimony of a witness may be discredited or impeached by showing that he has been convicted of a felony.* As such, his testimony must be carefully examined and weighed with great care." (Italics supplied here for emphasis.)

The court then instructed the jury as follows:

"If you find from the evidence that Ted Haney is an informant of the Federal Bureau of Narcotics, you may consider the principles that the testimony of an informer who provides evidence against the defendant or for immunity from punishment or personal advantage or vindication must be examined and weighed by you with greater care than the testimony of an ordinary witness. As such his testimony must be carefully examined and weighed with great care."

The court then proceeded with a number of instructions on other aspects and thereafter instructed the jury as follows:

"Evidence of a *defendant's* previous conviction of a felony is to be considered by you only insofar as it may affect the credibility of the *defendant* as a witness and must never be considered by you as evidence of guilt of any of the offenses for which he is standing trial."

(Emphasis added.)

This instruction does not refer to the witness Haney, because he was not "standing trial". It is obvious that the court erred in rejecting the tendered impeachment instruction which applied a well-established *test to the value of the testimony of Haney.*[1]

In so instructing the jury after rejecting the instruction tendered by defense

---

[1]. The Committee on Jury Instructions, of which Judge Walter J. LaBuy was chairman, in a Manual on Jury Instructions (1963), said at page 46:

 6.06–2 *Conviction of a Felony*

 The testimony of a witness may be discredited or impeached by showing that he had been convicted of a felony. Prior conviction does not render a witness incompetent to testify, it merely reflects on his credibility. It is the province of the jury to determine what weight, if any, should be given to such prior conviction as impeachment.

counsel, the court abused its discretion. In addition it must have confused the jury.[2] I would reverse and remand for a new trial.

---

2. The able district judge seemed to sense this, saying:

"* * * I apologize for letting this out but you might have sensed that I was perturbed about this matter of instructing. Very well, gentlemen. Good luck to both sides. I have no interest in the matter whatsoever. Let the chips fall where they may."